## MARSHALL *v.* VICKSBURG.

1. A. filed a bill in equity to enforce a forfeiture, and obtain compensation for breach of agreement. The defendant demurred by a single demurrer. The court sustained the demurrer as respected the forfeiture, and overruled it as to the residue of the bill. The complainant amended his bill in conformity to the opinion of the court. The defendant answered. Testimony was taken, and the complainant got a decree for so much money; less, however, than he claimed. He thereupon appealed to this court. The defendant did not appeal. *Held*, that though the court below had erred in sustaining *in part*, and overruling *in part* a demurrer which was *single*, yet that the complainant by amending his bill, and the defendant by answering afterwards had both waived their right to object anywhere: as the defendant specially had in this court by not appealing; and that the question of forfeiture was withdrawn from this court.

2. A. leased a wharf from a city on the Mississippi before the rebellion for a certain term, the city binding itself for indemnity if his "right to collect wharfage was suspended for any period by the intervention of third parties." *Held*, that the diminution of trade on the river caused by the rebellion did not suspend his right to collect; and that he had no claim for indemnity under his contract on account of such diminution.

3. The same lease providing "that in case the right to collect wharfage or rents should be defeated permanently through the instrumentality or with the aid of the mayor and council of the city," the property should revert, *Held*, that the right was not defeated within the meaning of the clause by an ordinance which the complainant had himself caused to be passed; nor by a "tax" which the city had reserved a right to lay, as distinguished from a wharfage charge; nor by quarantine embargo laid with the complainant's consent.

APPEAL from the Circuit Court for the Southern District of Mississippi, on a decree given by that court on a bill filed by Charles Marshall against the city of Vicksburg. The facts of the case can be gathered from different parts of the opinion given below.

*Messrs. P. Phillips and R. M. Corwine, for the appellant; Messrs. J. M. Carlisle and J. D. McPherson, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

On the 21st of November, 1851, the parties mutually executed an indenture, whereby Marshall conveyed to the city certain real estate therein described, and the city released to him certain other real estate also therein described. The premises conveyed to the city, embraced the city landing for steamers and other water-craft on the Mississippi River. It was stipulated that Marshall should receive all the wharfages and rents accruing from the premises conveyed by him from the date of the instrument, and for the term of ten years, to commence three months after the removal of a wharf-boat known as the " Governor Jones."

The wharfages collected from steamers were to be according to the rates specified in a lease from Marshall to Thomas Porterfield, and those from all other water-craft were to be such as should be fixed by the mayor and council of the city. The latter were not to be less than was then customary.

The city reserved the right to levy such tax on goods, wares, and merchandise coming to the landing as the mayor and council might deem proper. The indenture contained also the following clauses, which lie at the foundation of this litigation, and must control the rights of the parties:

"It is expressly agreed by the parties hereto, that if the *right to collect wharfage be suspended for any period* by the intervention of third parties, the time of such suspension shall be added to the said term of ten years, it being the intention of these parties that the said Marshall, his representatives, and assigns, shall actually receive the rents and wharfages accruing in ten years altogether, and no more.

"And in case the right to collect wharfage or rents shall be *interrupted or defeated permanently,* through the instrumentality or with the aid of the said mayor and council of the city of Vicksburg, all the property above conveyed by said Marshall and wife, shall immediately revert to him, his heirs, and assigns, and be as fully and absolutely his as if this deed had never been executed."

As filed, the bill asked for an enforcement of the forfeiture provided for. It alleges that the enjoyment of Marshall's wharf rights were interrupted by quarantines established by the city in the years 1853, 1854, 1855, and 1858, which subsisted for periods, amounting in the aggregate to about ten months, and claims that his term of ten years should be elongated to that extent. It claims also under these clauses compensation for the interruption of the navigation of the river to his injury by the civil war, and for several alleged breaches by the city of the agreement.

The city demurred. The court sustained the demurrer so far as it related to the forfeiture, and overruled it as to the residue of the bill. The complainant amended the bill in conformity to the opinion of the court. The defendant answered, and testimony was taken on both sides. The court decreed in favor of the complainant for the sum of $7600.67. The complainant thereupon appealed to this court. No appeal was taken by the city.

The court was right in the view which it took of the prayer for a decree of forfeiture. Equity never, under any circumstances, lends its aid to enforce a forfeiture or penalty, or anything in the nature of either.* Nevertheless it was an error to sustain the demurrer in part. That cannot be done. Where there is a single demurrer, it must be wholly sustained or overruled.† But the defendant not having appealed, is foreclosed from making the objection, and indeed it was conclusively waived by both parties; by the complainant, by the amendment which he made to his bill; and by the defendant, by answering. The question of forfeiture is therefore withdrawn from the case.

The first of the clauses relates to the acts of third persons. Under this clause, the only claim asserted is one growing out of the diminution of wharf charges accruing to Marshall by reason of the war. The language of the clause is, "if the right to collect wharfage is suspended for any period," &c. He was allowed to collect the wharfages as long as he claimed the right to do so; and then voluntarily delivered up the possession of the landing according to an understanding between him and the city authorities. This is proved by the testimony of Lindsay and Auter.‡

Auter, who called upon him as chairman of the landing committee of the city council, says:

"He told me that his term had expired, and that he had no more to do with the landing." "He surrendered the landing to me as chairman of the landing committee." "Mr. Marshall told me the city had imposed a hospital tax from flat-boats, amounting to about $1800. This he claimed rightfully belonged to him, and this was all he did claim."

Lindsay was the mayor. He says:

"Marshall made the surrender in writing." "I took the floor at a meeting of the council, and stated to the board, that in all the controversies I had held with Mr. Marshall, he had said he

---

* Livingston v. Tompkins, 4 Johnson's Chancery, 415; 2 Story's Equity, § 1319.

† Daniels's Chancery Practice, 583, 584.      ‡ Record, pp. 115, 125.

would, at the end of three months' extension (making the contract ten years and three months), make a peaceable and quiet surrender to the city, which he did do."

The breaking out of the war in 1861, necessarily interrupted the navigation of the Mississippi from the States not in rebellion. But the complainant's right to collect was in no wise suspended. He suffered from the war as others did, but his contract secured him no indemnity and a court of equity can give him none.

The second clause relates to the acts of the city. It declares that "in case the right to collect wharfage or rents be interrupted or defeated permanently," &c. Under this clause three claims have been pressed upon our attention.

It was insisted that the city, by her ordinance of February 7, 1852, reduced the wharfage for steamers from $5 per trip to $5 per week, in violation of the contract with the complainant, and largely to his injury. This is a grave imputation, and if established, would certainly entitle him to compensation. But the evidence shows that he drew up the ordinance himself, urged its adoption upon the council, that the city had no interest in the matter, and that the council passed it only by reason of his urgency, and because he thought the change would be beneficial to him.* *Volenti non fit injuria.*

It is alleged that under the ordinance of June 7, 1852, the city made a wharfage charge of $1 each upon all water-crafts other than steamers, touching at the landing. Upon looking into the ordinance we find it too clear to admit of doubt or require discussion that this charge was a tax, such as the city had reserved the right to impose, and not a wharfage charge falling within the category of those which belonged to the complainant. At the same time that this tax was exacted, Marshall was collecting an additional $2 from each of the vessels upon which it was imposed. With this the city in no wise interfered, and there is no complaint on that subject.

Lastly, it is claimed that the complainant is entitled to the

---

* See the testimony of Donovan, Record, p. 150; and of Arthur, p. 139.

income which he would have received during the extension
of his term of ten years, if it had been extended at its close
for the length of time the quarantines subsisted. The quaran-
tines affected only boats coming up the river, and only such
of those as had cases of fever on board. The quarantines
were established with the consent of the complainant. He
admits this, but says, that although he then made no such
claim, he expected his term to be extended accordingly. He
knew all about the quarantines when the extension which he
asked for was conceded to him, and when he yielded up the
possession, saying, he was done with the landing, and claimed
only the proceeds of the tax of $1, which we have already
considered. His right to collect wharfages was neither " in-
terrupted or defeated permanently," nor indeed gainsaid or
questioned by the city.

The claim is neither within the letter, meaning, nor equity
of the contract and must be denied. It appears that Marshall
made two loans from the city to remove incumbrances—one
of $1000. The amount of the other is not shown. Neither
of these loans has been repaid. There is no report of a
master in the record. The decree is very brief. The record
furnishes no means of ascertaining the ground upon which
the court proceeded, in coming to the conclusion that the
complainant was entitled to the sum decreed in his favor.

After a careful examination of the case we have found no
error against the appellant.

DECREE AFFIRMED.