## W. A. CHEATHAM & others *vs.* GEO. PLINKE & others.

### April Term, 1874.

LEASE—REMOVAL OF BUILDINGS.—Under a stipulation in a lease of the right of the lessee at the end of the lease to remove buildings erected during the term, the lessee is entitled to a reasonable time to remove them; and if the removal be prevented by act of the lessor, or by a provision of the lease itself, or by an independent contract with the lessor, the right would only be suspended, and would revive whenever the obstruction is removed.

LEASE—FORFEITURE.—A right of re-entry and forfeiture upon failure to pay rent, must be enforced during the term, otherwise the forfeiture will be waived.

LEASE—FORFEITURE.—Where by a lease the buildings erected were subject to forfeiture for a failure to pay rent, and a new lease made such conditions of the prior lease binding as were not changed by the "terms or express words" of the new lease, and one of these terms mortgaged the buildings to secure the rent, it was held that the right of forfeiture did not exist under the new lease.

*S. Watson*, for complainants.

*John Ruhm*, for defendants.

THE CHANCELLOR :—On the 3rd of August, 1865, com-

plainants leased to Daniel F. Lapsley, from the 1st January, 1866, to 31st December, 1869, a lot on Cherry street, with improvements, at an annual rent of $3,000. Lapsley was allowed to erect buildings on the vacant part of the lot, and sublet them and outbuildings. He was also given "the privilege of removing" any buildings erected by him, "at the expiration of the lease, when he shall have complied in full with all the conditions of the above agreement." On the failure of Lapsley to pay either of the above described notes as stated, then the lessor may "take possession and re-rent, and hold Lapsley and his security liable for any deficiency," etc.

On the 10th of January, 1866, Lapsley and defendants Plinke and Jansen, entered into a written agreement, by which the former sub-rented to the latter the vacant part of the lot aforesaid, for the full term of his lease, for an annual rent of $675, payable quarterly in advance. The sub-lessees had the privilege of putting such improvements on the lot as they saw proper, which improvements, the lease provides, "May be removed and taken off by them at the end of this lease. They also have the privilege to re-rent and sell said improvements and this their lease." If they failed to pay their rent as the same fell due, "then they forfeit all rights in this lease, and the possession, with all improvements, shall be delivered up to Lapsley, to be his absolutely."

On the 25th of October, 1866, by instrument in writing between the same parties, Lapsley formally leased the same property to Plinke and Jansen with the improvements, as it then stood, from the 1st January, 1867, to 31st December, 1869, in consideration of the payment by them of the rent as fixed by the previous agreement, to the complainant Shields agent, the latter having released him from $2,000 of the original rent. This lease provided that all the conditions of the agreement of the 10th of January, 1866, "not changed by the terms or express words of this lease," shall be held binding between said Shields and Plinke and Jansen, "and also that the terms and conditions expressed in the

37

lease from Geo. W. Shields, to Danl. F. Lapsley, dated August 3d, 1865, so far as they may be construed to relate to this portion of the property included in said lease, shall be equally binding."

This lease further contained the following recital: "In order to secure the payment of this rent, the said George Plinke and Daniel Jansen, have this day executed their mortgage upon the saloon and office built by them upon said premises, and the said George Plinke has included in said mortgage his house and lot on Ash street," etc.

On the said 25th of October, 1866, Plinke and Jansen did execute a mortgage to Shields, to secure the rent as provided in the foregoing lease, by which they conveyed to Shields "all the buildings and improvements, together with all the fixtures and appurtenances thereunto appertaining and belonging, erected by them, and now situated and being upon that portion of lot—on Cherry street—leased by us of even date herewith;" and Plinke also conveyed the Ash street house and lot.

The original bill in this cause was filed on the 17th of September, 1872, to foreclose this mortgage so far as the house and lot on Ash street were concerned, for the purpose of paying a balance still claimed to be due by Plinke and Jansen on the rent agreed to be paid by them to Shields, by the lease of the 25th of October, 1866. The defendant Plinke answers, and files his answer as a cross-bill, insisting that he and Jansen are entitled to a credit for the improvements put by them upon the lot, and for rent received by complainants for the same since the expiration of the lease. The only point of dispute between the parties, arises out of this claim. The complainants insist that the improvements became theirs upon expiration of the lease, the sub-lessees having failed to pay rent as stipulated, and not having removed the improvements, or asked to remove them at the expiration of the lease. The defendants, on the other hand, insist that the complainants, having accepted a mortgage on these buildings, and taken possession of them, are bound to account for their value and use.

The lease of the 3d of August, 1865, from Shields to Lapsley, contains no clause of forfeiture of improvements by a failure to pay rent. The only stipulation in favor of the lessor in case of such failure, is, that he may re-enter and re-rent, holding Lapsley and his surety liable for any deficiency. The lessee was given the privilege of removing buildings erected by him at the expiration of the lease, "when he shall have complied in full with the conditions of the above agreement." The law never infers a stipulation of forfeiture, nor enforces such a stipulation, except *strictissimi juris.* And equity never lends its aid to enforce a forfeiture. *Marshall* v. *Vicksburg,* 15 Wall. 149 ; *Livingston* v. *Tompkins,* 4 Johns. Ch. 415. The clause just quoted does not say that the right of removal shall depend upon the condition precedent of a compliance in full with the conditions of the agreement, but merely postpones the right of removal until the conditions are complied with. If, therefore, the rent had been in arrear at the expiration of the lease, the lessee could not have removed the buildings until such rent had been paid. Whenever he did pay, even by suit at the end of the lease, his right to remove would become absolute. A removal during the term of lease, is only required where the lease contains no stipulation on the subject. Under an express stipulation of removal " at the expiration of the lease," the lessee would have a reasonable time to remove. And if the removal were prevented by act of the lessor, or by a provision of the lease itself, or-other contract with the lessor, the right would only be suspended, and would revive whenever the obstruction was removed.

The agreement of the 10th of January, 1866, does contain the express stipulation, that if the sub-lessees failed to pay their rent as the same fell due, " then they forfeit all rights in this lease, and the possession, with all improvements, shall be delivered up to Lapsley to be his absolutely." If it be conceded that this stipulation, under the terms of the lease of the 25th of October, 1866, enured to the benefit of Shields, it is not claimed by him, nor is there any proof that

he ever sought to enforce it. Whatever right of re-entry and forfeiture he may have had, he must have enforced such right during the term. His failure to do so was clearly a waiver of the forfeiture.

But the lease of the 25th of October, 1866, only made such conditions of the agreement of the 10th of January, 1866, binding between Shields and Plinke and Jansen as were " not changed by the terms or express words of this lease." Now, one of the " terms or express words " of this lease, was that Plinke and Jansen had, by instrument of even date therewith, conveyed the buildings in question in mortgage to secure the rent, and the mortgage sought to be foreclosed is the mortgage thus referred to. Such a conveyance was incompatible with a right on the part of Shields to declare the buildings forfeited for failure to pay rent; because, the acceptance of the conveyance implies that the mortgagee will subject the property conveyed to the payment of such rent if it were not otherwise paid. The mortgage was to that extent a nullity, inasmuch as it contemplated a failure to pay the rent as possible, unless the lessor waived the right of forfeiture upon the very contingency of such failure to pay.

I am clearly of opinion, therefore, that the fact of the failure to pay rent, and the fact of the failure to remove the buildings thus mortgaged, did not work a forfeiture of them to the lessor. The sub-lessees are yet entitled to them as chattels, subject to the rights of the lessor as mortgagee. The mortgagee is liable to account for the use of them if, in fact, used by him, or any profit derived from their use, since he has been in possession. The mortgagee is entitled to subject them by sale as chattels to the satisfaction of the rent, if necessary. It is also clear that, inasmuch as the lessor has two funds for his security for arrears of rent, namely, the chattel buildings and their use or income, and the Ash street lot, and the defendants Steifel and Pfeiffer have only the latter, the lessor must first exhaust the former before going upon the latter. This is a well established equity.

A decree will be drawn up settling the rights of the parties upon the matters conceded by the pleadings and the principles of this opinion, and referring the case to the master for an account. The question of costs will be reserved until the coming in of the report.