FOLEY et al. v. GRAND HOTEL CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1903.)

No. 1,781.

1. EQUITY—RELIEF AGAINST FORFEITURE—OPPRESSIVE CONDUCT IN PROCURING APPOINTMENT OF RECEIVER.

A hotel company which had leased its hotel, acting in concert with a company which had made a conditional sale of the furniture therein to the lessee, to be paid for in installments, instituted a suit in equity against the lessee, alleging his failure to pay two monthly installments of rent, and obtained the appointment of a receiver, without notice, who took possession of the hotel and its contents, including the furniture and the funds on hand. At that time the lessee was not in default on the furniture, and had paid a large part of the purchase money. An installment which came due the next day, however, was not paid, and the seller declared a forfeiture of the contract under its terms, and filed an intervening petition in the suit, claiming to be the absolute owner of the furniture, and asking that its rights as such be protected. The lessee assigned his interest in the furniture contract to appellants, who held a mortgage thereon; and they offered to pay the installment due the seller, which was refused. They then filed an intervening petition, tendering payment of the installments remaining due, and asking protection of their rights as assignees of the contract. The remedy at law of the plaintiff in the suit was adequate under the lease, and no sufficient showing was made to justify the appointment of the receiver. *Held,* that the parties concerned in instituting the suit having taken the property into a court of equity by an unusual and unauthorized proceeding, which itself apparently caused the default in the furniture payment, upon which the forfeiture was declared, the court should exercise its powers to protect the equitable rights of all other parties in interest, and that, on the facts shown, appellants were entitled to a decree permitting them to pay into court the remainder due on the furniture contract, and to become the owners thereof.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

J. J. Shea (John P. Organ, on the brief), for appellants.
Charles M. Harl, for appellee Penn Mutual Life Ins. Co.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. From the record on file in this case, it appears that the Grand Hotel Company, one of the appellees, which owned a hotel in the city of Council Bluffs, Iowa, filed a bill of complaint against its tenant, D. C. Smith, wherein it prayed for the appointment of a receiver for the hotel property. The bill so filed contained no allegations, we think, which entitled the complainant to the appointment of a receiver, or to other equitable relief. It simply alleged that its tenant had leased the hotel for a period of five years from and after April 1, 1899; that he had failed to pay two installments of rent, in the sum of $300 each, which were due, respectively, on June 1, 1901, and on July 1, 1901; and that he had suffered the hotel to run down, and had been careless in the management of the same. The bill of complaint showed on its face that by the terms of the lease the hotel company had the right to declare a forfeiture of the lease for the nonpayment of these installments of rent. Nevertheless, without declaring such a forfeiture, and bringing an action at law for an unlawful detainer if its tenant refused to surrender possession of the hotel property, it applied to a court of equity for equitable relief in the form of an order appointing a receiver; and the lower court, as we think, erroneously granted such relief, and assumed charge of the property through the hands of its receiver. The present appeal, however, does not challenge the order so made, and the action of the lower court in making it is not before us for review.

The bill of complaint was filed on July 31, 1901, and a receiver was appointed on that day by an order made without notice to the defendant. On September 23, 1901, the Penn Mutual Life Insurance Company, one of the appellees, which held a mortgage on the hotel, and also an assignment of the rents under the lease in favor of Smith, and which had also made a conditional sale of all the furniture in the hotel to D. C. Smith, the lessee thereof, filed what it termed an intervening complaint in the action that had been brought by the hotel company against Smith, the lessee. In its intervening petition the insurance company, after setting out the terms of the agreement under which it had sold the hotel furniture to Smith, alleged, in substance, that Smith had failed to pay one installment of the purchase money that was due on the furniture, amounting to $150, which matured August 1, 1901; that by virtue of his failure to make this payment it had declared a forfeiture of all of his rights under the conditional contract of sale, as it had a right to do under the provisions of that instrument; and that the furniture in question was in the custody and under the management and control of the receiver theretofore appointed by the court for the hotel property. It accordingly prayed that the receiver might be adjudged to hold the furniture for the intervener's benefit, and that the court would protect its interest therein and its rights and title thereto. A few days later the hotel company made a merely formal answer, practically admitting all of the allegations of the intervening petition. Afterwards, on November 1, 1901, T. J. Foley, as surviving partner of the firm of Fenlon & Foley, and Peregoy & Moore, filed an intervening complaint in the equity cause. This intervening complaint stated, in

substance, that on April 9, 1901, D. C. Smith had executed and delivered a chattel mortgage, covering the furniture in the hotel, to secure the payment of an indebtedness which he owed to the interveners, and that on August 1, 1901, said Smith had executed in favor of the intervener J. M. Fenlon a written assignment of all his interest in the contract whereby he had purchased the hotel furniture from the Penn Mutual Life Insurance Company; that the interveners had offered to pay the Penn Mutual Life Insurance Company the installments of purchase money that were due to it under the conditional contract of sale, and were ready and willing to pay the same, but that the insurance company had refused to accept the money, and was insisting upon its right to retain the furniture and all of the purchase money theretofore paid by Smith, amounting in the aggregate to the sum of $5,450. The interveners alleged that the hotel furniture was then of the reasonable value of $7,500; that the insurance company was not entitled to hold the furniture as forfeited, together with all of the purchase money which had been paid thereon, but, at most, was only entitled to fair compensation for the use of the property while it had been in the custody of Smith, and to reasonable compensation for any depreciation in the value of the property during that period; and that such fair compensation for the use of the property and for any depreciation in value did not exceed the sum of $1,500. The interveners accordingly prayed that the insurance company be required to receive from the interveners the sums of money due to it under the contract with Smith for the purchase of the furniture, or, if it declined to receive the same, that it be directed to pay into court, for the benefit of the interveners, the amount of money which it had received on account of the purchase, to wit, $5,450; first deducting therefrom reasonable compensation for the use of the furniture, and for any depreciation in the value thereof. They further prayed the court to fully protect the interveners' interest in the hotel furniture, which they had acquired by virtue of the chattel mortgage and by virtue of the assignment aforesaid.

To this intervening petition the insurance company filed a reply in which it reasserted its right to hold the furniture and all of the purchase money which had been paid by the vendee. It also prayed that it be adjudged and decreed that it was the sole and absolute owner of the furniture in controversy, and that all of the rights of D. C. Smith, the purchaser thereof, and all of the rights of the interveners claiming under Smith, be adjudged forfeited.

Many other persons who had claims against Smith, the lessee of the hotel, on account of wages, etc., subsequently intervened in the cause; but the proceedings had thereon are unimportant, and need not be stated. By its final decree, which was entered on December 3, 1901, the lower court decreed that the claims of the interveners T. J. Foley, Peregoy & Moore, and J. J. Shea, as executor of the estate of James Fenlon, deceased, the latter of whom had been made a party to the proceeding, be fully barred and dismissed, and that the Penn Mutual Life Insurance Company was the full and absolute owner of the hotel furniture. From this latter order an appeal was taken by T. J. Foley and J. J. Shea, as executor of the estate of J. M. Fenlon,

deceased. Peregoy & Moore, as it seems, declined to join in the appeal, and they were accordingly named as appellees. The question to be determined, therefore, is one which arises solely between the Penn Mutual Life Insurance Company and Foley and Shea, the latter of whom claim to have succeeded to all the rights of D. C. Smith, the original purchaser of the hotel furniture. Some time after the litigation was inaugurated, Smith surrendered to the hotel company his lease of the hotel, and assigned to it all of his interest in the furniture now in controversy, subject, however, to the rights of the interveners, and is no longer interested in the litigation.

The principal error which the interveners assign is that the lower court erred in enforcing or declaring a forfeiture of their interest in the hotel furniture. It is said, and said truly, that a court of equity never lends its aid to enforce forfeitures, but leaves the parties concerned to assert their rights in a court of law. Courts of equity will grant relief against a forfeiture which has been incurred through accident or mistake, or by reason of any fraudulent, oppressive, or unfair conduct on the part of one who is asserting a right of forfeiture; but a chancellor will not lift his hand to aid a litigant in enforcing a forfeiture. Marshall v. Vicksburg, 15 Wall. 146, 149, 21 L. Ed. 121; Livingston v. Tompkins, 4 Johns. Ch. 415, 8 Am. Dec. 598; Insurance Co. v. Norton, 96 U. S. 234, 242, 24 L. Ed. 689; Henderson v. Carbondale Coal & Coke Co., 140 U. S. 25, 33, 11 Sup. Ct. 691, 35 L. Ed. 332. It is hardly accurate, however, to characterize the intervening petition of the insurance company as a bill to enforce a forfeiture, or the intervention by Foley and Shea as a bill to obtain relief against a forfeiture. After the lower court had appointed a receiver for the hotel property, including the furniture, both the appellants and the insurance company intervened in the case, as they were then obliged to do for the protection of their respective interests. The lower court, having the custody of the res, was asked by the insurance company to declare that it was the sole owner of the property, and had lawfully exercised its right of forfeiture, and to protect its interest, while the appellants asked permission to preserve their interest in the furniture by paying the installments of the purchase money which were due thereon pursuant to the conditional contract of sale. Both interveners were compelled to seek the forum in question after the receiver was appointed, and the court had assumed possession of the property in controversy.

The question of most importance in the case, as we view it, and the one upon which the decision principally depends, is whether the hotel company and the insurance company acted in concert in filing the original bill and procuring the appointment of a receiver. This is a question of fact, and we have considered it with some care, with the result that we have been constrained to believe that the bill was filed by the hotel company with the full knowledge and consent of the insurance company; the purpose of both parties being to force the lessee out of the hotel, and recover the possession of the same, as well as the possession of the furniture, with as little delay as possible. The question to be determined being, as above stated, one of fact, it would subserve no useful purpose to discuss the same at length.

It will suffice to say that the conclusion last announced has been formed after a perusal of all the testimony, and upon a consideration of the relations existing between the hotel company and the insurance company, and the circumstances under which the appointment of a receiver and the summary ouster of the tenant from the hotel was accomplished. These facts and circumstances leave little room for doubt that the two companies, acting in concert, and desiring to obtain the possession of the hotel and its furniture as expeditiously as possible, without resorting to a court of law, invoked the aid of a court of equity, and succeeded in obtaining it, although the remedy at law for the accomplishment of the object which they had in view was fully adequate.

The proceeding that the hotel company and the insurance company, acting in concert, saw fit to adopt for the attainment of their purpose, namely, the immediate ouster of the lessee, was certainly novel and without precedent. Moreover, when the proceeding had been chosen as the one most likely to lead to speedy results, the reasons that were assigned for the appointment of a receiver were clearly inadequate; and as the proceeding was unusual and based on insufficient grounds, and as the order appointing a receiver was made without notice, it doubtless took the defendant Smith, as well as the present appellants, who were then interested in the hotel furniture, by surprise. They were suddenly dispossessed of the property in controversy without an opportunity to be heard. Furthermore, as the receiver took possession of all the property in the hotel, including the furniture and the funds then on hand, and did so on July 31, 1903, the very day the bill was filed, it is fair to conclude that the action so taken at the instance of the hotel company, and with the knowledge and concurrence of the insurance company, occasioned the very default of which the insurance company now complains, namely, that Smith, the purchaser of the furniture, did not pay the sum of $150 on account of the purchase price which was payable on August 1, 1901. It was on account of that default, and on account of Smith's alleged failure to pay certain taxes, that the insurance company claims to have declared a forfeiture of all of his rights under the conditional contract of sale. Up to that time Smith had paid to the insurance company the sum of $5,450 on account of the furniture. No payment was due on July 31, 1901, but the appointment of a receiver on that day appears to have disabled the purchaser from paying the installment of the purchase money that was due on the following day, which result was doubtless foreseen and intended by those who were instrumental in obtaining the appointment and ousting the lessee from the possession of the hotel.

In view of the premises, we are of opinion that the trial court erred in declaring that the appellants' claims were barred, and that their intervention be dismissed, and in adjudging that the Penn Mutual Life Insurance Company was the absolute owner of the furniture in the hotel; thereby setting the seal of approval upon what had been done, and aiding the insurance company to obtain an absolute title to the furniture, as well as aiding it to appropriate to its own use the large sum of money that had already been paid thereon by the pur-

121 F.—33

chaser. Inasmuch as the proceeding by which Smith had been dispossessed of the property in controversy was most unusual and operated as a surprise, and was in its nature oppressive, and had probably occasioned the very default on which the insurance company predicated its right of forfeiture, a court of equity, instead of declaring that the right had been lawfully exercised, and that the insurance company had become the absolute owner of the property, should have strained its powers to the utmost to prevent such a result, and the sacrifice of valuable rights by such means. Having possession of the res, it was within its power to have permitted the appellants to pay into court, for the use of the insurance company, the installments of the purchase price due on the furniture as they accrued, which payments the appellants offered to make. Under the provisions of the conditional contract of sale, the appellants had no right to pay at once all that was due on the furniture, and forthwith remove it from the hotel, because the contract in question contained a provision, in substance, that the furniture should remain in the hotel where it was located until the purchase money was fully paid, and that it should not be removed from the hotel without the consent of the insurance company. It was within the power of the lower court, however, to have permitted the appellants to make the payments on the furniture as they matured, by depositing the money in court for the benefit of the insurance company, if it declined to accept the money itself, and to have adjudged that when the property was paid for, and all other acts to be done by Smith had been faithfully performed by him or his assigns, the appellants be permitted to remove the property from the hotel, or make such other disposition of it as they thought proper. We think that the lower court, sitting as a court of chancery, should have exercised the power in question, and should have entered a decree, such as is above outlined, for the purpose of preserving the appellants' rights, and that it erred in refusing to grant such relief, and in decreeing, as it did, that the insurance company was the absolute owner of the property.

It is accordingly ordered that so much of the decree as adjudged that the appellants' claims be fully barred and their interventions dismissed, and that so much of the decree as adjudged that the insurance company was the absolute owner of the furniture, be reversed, and that the cause be remanded to the lower court, with directions to modify its decree by inserting therein such a provision or provisions as are above described.