## Case No. 2,990.

COLE SILVER MIN. CO. v. VIRGINIA & GOLD HILL WATER CO. et al.

[1 Sawy. 685;[1] 7 Morr. Min. Rep. 516.]

Circuit Court, D. Nevada. Oct. 6, 1871.

INDISPENSABLE PARTIES—PROPER PARTIES—JURISDICTION OUSTED—MANDATORY PRELIMINARY INJUNCTION—DENIAL ON INFORMATION.

1. One whose rights will necessarily be affected by the operation of a decree in equity is an indispensable party to the action, and the

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

court will not proceed to a decree without his presence.

[Cited in Preston v. Walsh, 10 Fed. 327; Greene v. Klinger, Id. 691; Bell v. Donohoe, 17 Fed. 711; Chadbourne v. Coe, 51 Fed. 481.]

2. Where a decree can be made settling the rights of the parties before the court, without affecting the rights of others absent, the court may proceed to a decree, although those absent might be proper parties to the action.

3. Where the bringing in of an absent party, whose presence might otherwise be deemed material, would oust the court of jurisdiction; the court will "strain hard" to grant relief as to the parties before it.

4. In a proper case, a court of equity will grant a preliminary injunction in a restrictive form, although an obedience to the injunction should require the performance of substantive acts on the part of the party enjoined.

[Cited in Lathrop v. Junction R. Co., Case No. 8,110.]

5. The court will not dissolve a preliminary injunction upon the denials of the equities of the bill made upon information and belief merely; nor upon affirmative allegations of new matter meeting the equities of the bill made only upon information and belief.

[6. Cited in Giant Powder Co. v. Cal. Vigorit Powder Co., 5 Fed. 202, Preston v. Walsh, 10 Fed. 316, and Oglesby v. Attrill, 14 Fed. 215, to the point that the rulings of one judge of a circuit court are not open for review to any other judge sitting in the same court in the same case.]

In equity. Motion to dissolve an injunction on bill and answer. The facts sufficiently appear in the opinion, and in the report of the same case before Sawyer, Circuit Judge, on motion for an injunction. [Case No. 2,-989.]

Mitchell & Stone and S. W. Sanderson, for complainants.

R. S. Mesick and Williams & Bixler, for defendants.

FIELD, Circuit Justice. This is a motion to dissolve an injunction issued upon the bill of complaint. It is made upon three grounds: 1. That Herman Glauber, who is a citizen of the state of California, is an indispensable party defendant in the suit, without whose presence the court cannot proceed to a decree. 2. That the injunction, though preventive in form, is mandatory in fact, and an injunction of this character cannot issue upon an interlocutory application. 3. That the equities of the bill are fully denied by the answer.

I. The question whether Glauber is an indispensable party depends upon the further question, whether he is materially interested in the matter in controversy, or object of the suit, and that interest would be necessarily affected by any available decree consistent with the case presented by the bill.

It is undoubtedly a general rule in equity that all persons materially interested in the matter in controversy, or object of the suit, should be made parties in order that complete justice may be done and a multiplicity of suits be avoided. And usually when it appears that persons thus interested are not brought in, the court will order the case to stand over until they are made parties. A court of equity, as has been said by a distinguished chancellor, delights to do complete justice, and not by halves. But sometimes, from the residence of parties thus interested, the court is unable to bring them all before it. Particularly is this so with the circuit court of the United States, which possesses no power to authorize a constructive service of process upon absent or non-resident defendants, and which can only exercise its jurisdiction in that class of cases depending upon the citizenship of the parties, where all the parties, however numerous on one side, are from a state different from that of the parties on the other side. In all such cases, the court will consider whether it is possible to determine the controversy between the parties present, without affecting the interests of other persons not before the court, or by reserving their interests. If the interests of those present are severable from the interests of those absent, such determination can generally be had, and the court will proceed to a decree. But if the interests of those present and those absent are so interwoven with each other, that no decree can possibly be made affecting the one without equally operating upon the other, then the absent persons are indispensable parties, without whom the court cannot proceed, and, as a consequence will refuse to entertain the suit. Shields v. Barrow, 17 How. [58 U. S.] 130; Barney v. Baltimore City, 6 Wall. [73 U. S.] 280.

The inquiry then, is this: whether Glauber possesses any interest in the controversy, or object of the suit, which is so interwoven with that of the other defendants, that no available decree consistent with the case presented by the bill, can be rendered against them, which will not necessarily affect him. The suit is brought to prevent a diversion of water of which the complainant claims to be the owner by discovery and prior appropriation. The water, or which amounts to the same thing, the exclusive use of it, is the matter in controversy, and the substantial object of the suit is to prevent any interference with such use by the defendants. Glauber, according to the allegation of the bill, is not interested in the water in controversy, but only in the tunnel by means of which the water is diverted.

Now if a decree can be rendered which will secure to the complainants the exclusive use of the water, and at the same time leave the right and interest of Glauber in the tunnel unimpaired, the objection founded upon his absence as a party defendant will not be tenable. The learned counsel of the defendants intimated on the argument of the case, that should the court ultimately determine that the complainant is entitled to the water, it might be necessary to decree that the tunnel be filled up. If only a decree of

that character can be rendered to give protection to the complainant's rights, then undoubtedly Glauber is an indispensable party. But the complainants' counsel suggest several forms in which a decree may be made protecting the asserted rights of the complainants without in any respect trenching upon Glauber's rights in the tunnel. The defendants might, for instance, be restrained from interfering with the water or performing acts to prevent the resumption by the complainants of its possession and use. It is stated, that even if the defendants should not be decreed to do any specific act, such as the erection of a bulkhead, or the restoring of the water diverted, a decree would not be altogether fruitless which would allow the complainants to pump the water from the bed of the Nevada tunnel into its own tunnel, provided no counter work should be carried on in the Nevada tunnel to prevent such pumping; or allow the complainants to resume possession of the water at the mouth of the tunnel. A decree which would enjoin the defendants from opposing the complainants' resumption of the water in either of these modes, would substantially accomplish the objects of the suit, and at the same time leave the Nevada tunnel and the interests of Glauber therein as they existed previously.

It would certainly be going a great way, and not entirely consistent with proper respect for my associate, who is possessed, in the circuit court, with equal authority with myself, if I should undertake to determine against his conclusions upon substantially the same representation of facts, without leave first granted for a re-argument of the question, that Glauber is an indispensable party, and thus decide, in advance of the presentation of the entire case, that no decree could possibly be rendered which would afford protection to the complainant without infringing upon the rights of the absent Glauber. I shall leave the matter to his determination, simply observing, that in a case of this kind, when the absent person alleged to be interested would, if brought into court, oust its jurisdiction, I should follow the course suggested by Mr. Justice Story in West v. Randall [Case No. 17,424], and strain hard to give relief as between the parties before the court.

II. The injunction, although preventive in form, is undoubtedly mandatory in fact. It was intended to be so by the circuit judge who granted it, and the objection which is now urged for its dissolution was presented to him, and was fully considered. I could not with propriety reconsider his decision, even if I differed from him in opinion. The circuit judge possesses, as already stated, equal authority with myself in the circuit, and it would lead to unseemly conflicts, if the rulings of one judge, upon a question of law, should be disregarded, or be open to review by the other judge in the same case.

But were I not restrained by this consideration from interfering with the order of the circuit judge, I should hesitate before dissolving the injunction upon the ground stated. The benefit of the preventive remedy afforded by courts of equity in the process of injunction would often be defeated, if the remedy only extended to cases where obedience would not require any affirmative acts on the part of the party enjoined. The owner of flumes, aqueducts or reservoirs of water might, for instance, flood his neighbor's fields by raising the sluice gates to these structures, and, if the flowing should not be speedily stayed, might destroy the latter's crops; and yet, according to the argument of the learned counsel, no injunction could issue to restrain the owner from continuing the flood, if obedience to it should require him to do the simple affirmative act of closing his gates. The person whose fields were inundated and whose crops were destroyed, in the case supposed, would find poor satisfaction in being told that he must wait until final decree before any process could issue to compel the shutting of the gates, and he must seek compensation for the injuries his property may suffer in the meantime, in an action at law.

There is no species of property requiring more frequently for its protection and enjoyment the aid of a court of equity, and particularly of its preventive process of injunction, than rights to water. For purposes of mining as well as for ordinary consumption, water is carried in the mining regions of Nevada and California over the hills and along the mountains for great distances, by means of canals and flumes and aqueducts, constructed with vast labor and enormous expenditures of money. Whole communities depend for the successful prosecution of their mining labors upon the supply thus furnished; and, it is not extravagant to say that much of the security and consequent value of this species of property is found in the ready and ample protection which courts of equity afford by their remedial processes of injunctions, anticipating threatened invasions upon the property, restraining the continuance of an invasion when once made, and preserving the property in its condition of usefulness until the conflicting rights of contesting claimants can be considered and determined. The limitation of the process to cases calling for no affirmative action on the party enjoined would strip the process in a multitude of cases of much of its practical benefit.

I am aware that there are adjudications of tribunals of the highest character denying the authority of a court of equity, on a preliminary application, to issue an injunction, even in a restrictive form, when its obedience would require the performance of a substantive act. Such is the case of Audenried v. Philadelphia & R. R. Co., recently decided in the supreme court of Pennsylvania, to

which my attention has been called by the defendant's counsel. 68 Pa. St. 370. The opinion in that case was delivered by Judge Sharswood, who is a jurist of national reputation, and anything which falls from him is justly entitled to great consideration. He states that the authorities both in England and in this country are very clear that an interlocutory or preliminary injunction cannot be mandatory. By this he means, I suppose, that the authorities show that such an injunction cannot be mandatory in form, for he refers to the case of Lane v. Newdigate, 10 Ves. 193, where Lord Eldon ordered an injunction to be drawn so that, although restrictive on its face, it compelled the defendants to do certain specific things. Of that case the learned judge observes that it is not á precedent which ought to be followed in any court, and that a tribunal which finds itself unable directly to decree a thing, ought never to attempt to accomplish it by indi-

Notwithstanding the great respect I entertain for the opinions of Judge Sharswood, and for the decisions of the supreme court of Pennsylvania, I am not prepared to assent to the view of the authorities stated in the case cited, nor to the conclusion there expressed that the cases in England ought not to be followed in any instance. Certain it is that the jurisdiction of the court of chancery in England to decree in special cases upon motion the issue of injunctions which, though restrictive in form, may still require for their obedience the performance of substantive acts, has been uniformly maintained since the time of Thurlow. In Robinson v. Lord Byron, 1 Brown, Ch. Cas. 588, a motion was made for injunction upon affidavits, stating that since April 4, 1785, the defendant who had large pieces of water in his park, supplied by a stream which flowed to the mill of the plaintiff, had at one time stopped the water, and, at another time let in the water in such quantities as to endanger the mill. The lord chancellor, Thurlow, ordered an injunction to restrain the defendant "from maintaining or using his shuttles, floodgates, erections and other devices, so as to prevent the water flowing to the mill in such regular quantities as it had ordinarily done before the fourth of April, 1785." The defendant was, therefore, compelled by this injunction, to remove such floodgates and other erections as he had constructed, if they impeded the regular flow of the water, as it had existed before the date designated.

In Lane v. Newdigate, 10 Ves. 192, already mentioned as referred to by Judge Sharswood, the plaintiff was assignee of a lease granted by the defendant for the purpose of erecting mills and other buildings, with covenants for the supply of water from canals and reservoirs on the defendant's estates, reserving to the defendant the right of using the water for his own collieries.

The bill prayed generally that the defendant might be decreed to use and manage the waters of the canal, so as not to injure the plaintiff in the occupation of his manufactory, but particularly that the defendant might be restrained from using certain locks, and thereby drawing off the water which would otherwise run to and supply the manufactory, and be decreed to' restore a particular cut for carrying away the waste waters, and a certain stop-gate, and to restore the banks of the canal to their former height, and also to repair such stop-gates, bridges, canals and towing-paths as existed previous to the lease, and to remove certain locks since made. Upon motion for an injunction, the lord chancellor, Eldon, expressed a doubt whether it was according to the practice of the court to decree repairs to be done, but finally made an order restraining the defendant from impeding the plaintiff in the use and enjoyment of the demised premises and the mills erected thereon, and the privileges granted by the lease, by continuing to keep the canals, or the banks, gates, locks or works out of repair; and from preventing such use and enjoyment by diverting the water or the use of any locks erected by the defendants, or by continuing the removal of the stop-gate, the chancellor observing at the same time that the injunction would create the necessity of restoring the stop-gate.

In Rankin v. Huskisson, 4 Sim. 13, the defendants, were restrained on motion by Vice-Chancellor Shadwell from continuing the erection of stables on certain premises agreed to be laid out as an ornamental garden, adjoining a club-house, and from preventing such part of the building as was already erected from remaining thereon. They were therefore compelled to remove the building already commenced.

In Hepburn v. Lordan, 2 Hem. & M. 345, the defendants were restrained upon motion by Vice-Chancellor Wood from allowing inflammable damp jute deposited on premises adjoining those of the plaintiff, to remain there, and from bringing any more in such quantities as to occasion danger to the plaintiff's property. Other cases to the same purport might be cited, but these are sufficient, I think, to show that a court of equity has jurisdiction to issue, upon an interlocutory application, an injunction which will operate to compel the defendants, in order to obey it, to do substantive acts. It is a jurisdiction which should only be exercised in a case where irreparable injury would follow from a neglect to do the acts required. Some of the adjudged cases evince a disposition on the part of the court to restrict rather than enlarge this jurisdiction. Blakemore v. Glamorganshire Canal Nav., 1 Mylne & K. 154. Undoubtedly, the general purpose of a temporary injunction is to preserve the property in con-

troversy from waste or destruction or disturbance until the rights and equities of the contesting parties can be fully considered and determined. Usually this can be effected by restraining any interference with it; but in some cases the continuance of the injury, the commencement of which has induced the invocation of the authority of a court of equity, would lead to the waste and destruction of the property. It is just here where the special jurisdiction of the court is needed—to restore the property to that condition in which it existed immediately preceding the commencement of the injury, so that it may be preserved until final decree.

III. It only remains to consider whether the equities of the bill are so fully denied by the answer as to justify the dissolution of the injunction. The material allegations of the bill are that the complainant, in running certain tunnels into its mining claims, discovered and appropriated the water in controversy; and that the defendants subsequently, by means of the Nevada tunnel, struck the water, and diverted it from the complainant. These allegations are not positively denied by the answer. The construction of the tunnels of the complainant, and the diversion of the water by the defendants through the Nevada tunnel are admitted. The discovery and prior appropriation of the water by the complainant are only denied upon information and belief; and every denial which relates to the title of the water is made in a similar manner. Denials in that form may be sufficient to raise an issue for trial, but they amount, for the purposes of the motion, to no more than hearsay evidence. They will not justify the dissolution of the injunction.

"The sole ground," says Mr. Justice Story, "upon which the defendants are entitled to a dissolution of an injunction upon an answer, is, that the answer in effect disproves the case made by the bill, by the very evidence extracted from the conscience of the defendant, upon the interrogation and discovery sought by the plaintiff to establish it. But what sort of evidence can that be, which consists in the mere negation of knowledge by the party appealed to? Such negation affords no presumption against the plaintiff's claims; but merely establishes, that the defendant has no personal knowledge to aid it or disprove it. It is upon this ground that it has been held, and in my judgment very properly held, that if the answer does not positively deny the material facts, or the denial is merely from information and belief, it furnishes no ground for an application to dissolve a special injunction." Poor v. Carlton [Case No. 11,272]. See, also, Roberts v. Anderson, 2 Johns. Ch. 202; Ward v. Van Bokkelen, 1 Paige, 100; U. S. v. Parrott [Case No. 15,998].

The same objection applies to the allegations respecting the new matter relied upon to establish prior rights in the two Schiels, with whom the defendants claim to be in privity. Upon inspection of the answer, it appears that all which is stated in relation to the origin, working, continuance and transfer of the defendants of the claims of these parties is founded upon information and belief. The statement does not purport to be made upon any personal knowledge, possessed by the defendants, but only "according to their information and belief." Allegations resting upon this foundation furnish no ground for disturbing the injunction. For all the purposes of this motion the case stands precisely as though these allegations were omitted from the answer.

The questions suggested by the learned counsel of the defendants—whether the water exists in such state or condition as to render its diversion, under the circumstances, remediable, or anything more than damnum absque injuria; and whether the injunction is consistent with the policy and license of the general government to miners upon public lands—can be better considered and more justly determined on the hearing after the entire facts of the case are developed by the evidence. Upon the case as presented, I am of opinion that the injunction should be continued until the hearing. The motion to dissolve the injunction is therefore denied.