## PRESTON *v.* WALSH, Com'r, etc.*

*(Circuit Court, W. D. Texas. January, 1882.)*

1. CONTRACT OF THE REPUBLIC OF TEXAS—TRUST.

     The contract made by the republic of Texas, acting by Samuel Houston, president, on the eighth of January, 1844, with Charles Fenton Mercer, was valid and binding on the republic. That contract created an express trust in favor of Mercer and his associates, of all the unlocated lands then lying within the limits fixed by the contract, to secure the performance of the contract.

2. ANNEXATION OF TEXAS.

     By the compact of annexation the state of Texas assumed all the obligations, liabilities, and duties, including those resulting from the express trust, theretofore bearing on the republic of Texas, in relation to said contract with Mercer.

3. CONTRACT—TRUST.

     Under the constitution of the United States, and the resolutions and compact of annexation, the state of Texas has been and is without power, by any law, to impair the obligation of the said contract, or the trust resulting therefrom.

4. STATUTE OF LIMITATIONS—TRUSTEE.

     Neither lapse of time, nor any defence analogous to the statute of limitations, can be set up by the trustee of an express trust as a defence to his ability to execute the trust.

     *Hancock* v. *Walsh,* 3 Woods, 351, followed.

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

5. Certain Proceedings and Judgment Void.

The proceedings had and the judgment rendered in the district court of Navarro county, in the years 1847 and 1848, wherein A. C. Horton, acting governor, for the benefit of the people of Texas, was plaintiff, and Charles Fenton Mercer and associates, unknown, were defendants, were absolutely null and void for want of legal notice to the defendants.

6. Texas—Contracts—Trusts.

The state of Texas, by law, has never repudiated the contracts with Mercer, or the trust resulting therefrom.

7. Equity Jurisdiction—Injunction.

The court of equity has jurisdiction to prevent, by injunction, the waste, alienation, or destruction of a trust estate.

8. Jurisdiction of Federal Courts.

While the circuit courts of the United States have no jurisdiction to entertain a suit against a state of the Union, they have jurisdiction of, and will entertain a suit brought by, a proper party against an officer of a state who, under color of his office, but without lawful authority, is wasting, alienating, or destroying a trust estate, although the state may be the trustee and remain silent.

*Davis* v. *Gray*, 16 Wall. 203.

9. Same—Equity Pleading.

In such a suit, where the state is no party, and yet is declared to be the trustee of an express trust, the defendant is without right or interest to plead in defence a repudiation by the trustee, to shield himself from unlawful conduct.

10. Same—Specific Performance—Decree for Title.

Where the relief asked is in the nature of specific performance of the contract, or, at least, a decree for title, it is imperative that the party required to perform, or who holds the legal title, should be before the court ; and such party, who is in this instance the state of Texas, not being a party to these proceedings, this court has no jurisdiction to grant such relief.

In Equity.

*Brown, Preston, Hancock & West,* for complainant.

*Peeler & Maxey* and *Willson & Saines,* for defendant.

Pardee, C. J. Justice Field, on the ninth circuit, in the case of *Cole Silver Mining Co.* v. *Virginia & Gold Hill Water Co.* 1 Sawy. 685, refused to hear questions of law previously determined by the circuit judge in the same case, saying :

"The circuit judge possesses equal authority with myself in the circuit, and it would lead to unseemly conflicts if the rulings of one judge upon a question of law should be disregarded, or be open to review by the other judge in the same case."

The proposition, so evident upon its face, acquires greater force when the circuit judge is called upon to consider the rulings of the circuit justice in the same case. See 2 Fish. Pat. Cas. 120. This case has been before this court for hearing upon demurrer and for injunction

*pendente lite,* and was heard and decided by my predecessor, Judge Woods, now circuit justice of this circuit. Justice Woods' decision covers many points, is full and elaborate, and is reported by himself in *Hancock,* 3 Woods, 351. The points decided, as stated by the judge himself, are:

(1) A bill filed against the commissioner of the general land-office of Texas to restrain him from allowing locations of land within the limits of a grant made to a party under whom complainant claimed, and which was afterwards confirmed by the state of Texas, is not a suit against the state.

(2) The colonization contract made by the republic of Texas, acting by Samuel Houston, president, on January 29, 1844, with Charles Fenton Mercer, was valid and binding on the republic.

(3) By the terms of the joint resolution of the congress of the United States, for the annexation of Texas as a state in the Union, she was allowed, as one of the conditions of annexation, to retain the vacant unappropriated lands within her limits, to be applied to the payment of the debts and liabilities of the republic of Texas. This resolution having been assented to by the convention of Texas, it is not within her power to refuse compliance with its conditions.

(4) Whether the resolution of annexation and its acceptance by Texas is to be considered as a treaty or contract, it is equally binding on the state, and she cannot escape from its obligations.

(5) A state may become a trustee.

(6) A trust assumed by the republic of Texas was not extinguished by the formation of the state of Texas and the annexation to the Union, but was fastened upon the state as the sovereign successor of the republic.

(7) Neither lapse of time, nor any defence analogous to the statute of limitations, can be set up by the trustee of an express trust as a defence to his liability to execute the trust.

An examination of the full opinion will show that each of these propositions is fully decided upon reason and sustained by authority, as well as many other questions not stated in the syllabus.

So far, then, as any of these questions now come up for consideration in determining the rights of the parties now before the court, they must be taken as settled for this case in this court, if for no other case nor any other court. And for further authority see *Aurora City* v. *West,* 7 Wall. 99.

Since the decision on the demurrers and the motion for preliminary injunction the complainant has, by leave obtained of the court, filed an amended bill. Said amended bill, in addition to the matters previously alleged in the original bill and in other bills of revivor and supplement, charges:

That the contract between the republic and Mercer created an express trust as to all the lands embraced in the limits assigned to the Mercer colony, which trust has never been satisfied, reversed, abandoned, nor forfeited.

That by the stipulation attending upon the annexation of Texas to the Union an express trust was created upon all the vacant and unappropriated lands retained by Texas to secure the payment of all the debts and liabilities of the republic.

That the rights acquired by Mercer and his associates constituted one of the liabilities recorded by this express trust resulting from annexation, and that the said liability has never been satisfied, extinguished, nor forfeited.

That there was never any intention of the deputies of the people, in convention assembled, to declare any forfeiture of colony contracts, or to establish by any constitutional enactment how and why any forfeiture should be declared; and that no method has ever been declared by law for the forfeiture of such grants and the disposition of the lands.

That, notwithstanding the grant to Mercer and his associates, the defendant and his predecessors in office, without warrant of law, have assumed and pretended to make and issue and deliver certificates and patents for lands within the limits of the Mercer grant to numerous persons not claiming through or under privity of Mercer or the Texas Association, which persons have paid money and made improvements in ignorance of their infringement on the rights of the Texas Association, and that this has been done to such an extent that the remaining lands within the limits of the Mercer grant are inadequate to satisfy the just demands and rights of the complainant.

That complainant is unwilling to interfere with the persons so acquiring rights, as they have expended money and labor in apparent good faith, and an interference would result in great hardship,

That the defendant is violating the preliminary injunction issued in this case, and, confederating with O. M. Roberts, governor of Texas, is issuing certificates and patents for lands in contempt of this court, and to the great injury of complainant.

That defendant, confederating with said Roberts, has procured the passage of an obstruction act by the legislature of the state, which act makes it the duty of the governor to countersign all certificates and patents of public lands.

That the lands within the limits of the Mercer colony, by reason of their location and fertility, are more valuable than the other vacant lands in the state, and that if orator is driven to the other lands to satisfy his claim quantity should compensate for quality.

That under the constitution and laws of Texas, as they existed when Mercer's rights attached, and when this suit was instituted, the records and surveys and plats and maps relating to the public lands were to be kept in a general office, to be under the charge of a general land commissioner, who, upon proper showing, should issue patents for lands under the seal of the state. And that defendant is such commissioner in charge of such office, and that he and his predecessors, though duly demanded, have refused to issue to orator and the Texas Association such certificates and patents as the records of the

land-office clearly show orator and the Texas Association are entitled to have and receive, and that until such delivery of certificates and patents there is no duty devolving upon any other officer or department of the government of the state, nor upon orator, nor the Texas Association, under the terms of the Mercer contract.

And the bill prays—

For a discovery for the perpetuation of the preliminary injunction ; for a further injunction restraining defendant, as general land commissioner of the state of Texas, from issuing certificates or patents for any of the vacant and unappropriated lands of the state, within or without the limits of the Mercer colony grant, until orator's just demands are satisfied; for a mandatory injunction compelling the defendants to issue patents to orator for the use of the Texas Association, covering about 2,752 sections of land as grants, premiums, and pre-emptions within the limits of the Mercer colony; or, if not found therein, then for an equivalent from the other vacant lands of the state, and for general relief, etc.

The defendant filed a plea in bar, and a disclaimer and answer, and a motion to dissolve prior to the filing of the amended bill.

After the amended bill he filed a general answer, which, of course, waived his pleas, and the original answer was merged in the last formal sworn answer.

This answer, containing the whole defence exhibited, sets up:

(1) A denial of performance on the part of Mercer and his associates of the various obligations devolving upon them under the contract specifically, to-wit: *a.* That Mercer never introduced settlers, as bound by his contract. *b.* That he never made the surveys, and furnished the plats, maps, field-notes, etc. *c.* That he never built the cabins or small houses. *d.* That he never furnished and kept on hand the ammunition supplies. *e.* That his settlers were not armed with rifle, yager, or musket. *f.* That he did not make the reports required by the contract. *g.* That he and his associates did not obtain the act of incorporation required.

(2) That Mercer and his associates were required by a joint-resolution of the republic, approved February 3, 1845, to have the lines of that colony land actually surveyed and marked by April 1, 1845, under pain of forfeiture; and that therein Mercer and his associates failed.

(3) That the map bearing date May 1, 1845, filed with bill marked Exhibit E, appeared to be of recent date, and had been surreptitiously deposited in the office of the secretary of state, without the knowledge or consent of the officer, and that said map was not made in accordance with the contract, did not give the correct boundaries or limits, and took in about 3,000 square miles more than the contract covered.

(4) That the contract was made against the will and in contempt of the people of Texas, having been made after both houses of the legislature had passed a bill repealing the authority theretofore given the president to make such contracts, and only the day before such bill became a law by passing

over the veto of the president, and that Mercer was well aware of the opposition of the people, as he was present attending on the session attempting to procure from the congress an extension of the Peters contract, in which he was interested.

(5) That the opposition of the people continued, and that the convention of 1845 adopted an ordinance denouncing colony contracts as unconstitutional and void, and as operating a monopoly, to the exclusion of citizens, soldiers, and creditors of the republic, and providing that it should be the duty of the attorney general of the state, or the district attorney of the district in which any portion of the colonies might be situated, as soon as the organization of the state should be complete, to institute legal proceedings against all colony contractors, and providing that if any contracts should be found, upon such investigation, unconstitutional, illegal, or fraudulent, or that the conditions had not been complied with according to its terms, such contract should be adjudged null and void, but without prejudice to actual settlers. That said ordinance was adopted by a vote of the people, and thereby became a part of the fundamental law of the land, and that the state organization was completed February 16, 1846. That in obedience to said ordinance J. W. Harris, attorney general of the state of Texas, on the eleventh day of October, 1846, filed a suit in the district court of Navarro county, in which county part of the Mercer grant was situated—a suit in the name of A. C. Horton, governor of the state, for and on behalf of said state, as plaintiff, against Charles Fenton Mercer and his associates, as defendants, alleging non-performance on the part of said Mercer and his associates, and illegality and unconstitutionality from the beginning, and praying that the contract be declared null and void from the beginning. That said Mercer and his associates were duly and legally cited to appear and answer; and that thereafter, at the September term, 1848, the said suit was fully heard and determined, and it was fully and finally adjudged and decreed, upon the verdict of a jury, that the said contract of January 29, 1844, was null and void. That such judgment is still in full force, unreversed, and unavoided.

(6) That the parties in that suit are identical in interest and privity with the parties to this suit, and that the subject-matter is the same; that Navarro county had jurisdiction; that Mercer and his associates were represented and had a fair trial; and that the said judgment has the force of the thing adopted, and the same is a full and complete bar to this action.

(7) That the state has never, by the act of February 3, 1850, nor by the act of August 12, 1870, nor by any other act, recognized the validity of the Mercer contract. On the contrary, it has always acted on the theory of its invalidity, and all legislation in relation to its public lands, or in relation to relief to actual settlers in the Mercer colony limits, has stipulated against the contractors taking any benefit from the legislation.

(8) That no trust has ever been created in favor of Mercer and his associates; no title has ever vested; no possession has been had; and that the complainant nor the Texas Association are not entitled to any of the pubic lands by reason of said contract, either for settlers or for premiums.

(9) That defendant is a sworn and bonded officer, governed by the laws of the state, and that by law, approved April 19, 1877, when questions may arise

he is obliged to consult the governor and follow his advice.    That in this matter he has advised with Hon. O. M. Roberts, governor, and has been instructed by the governor not to issue any certificates for land to said Mercer and associates, and to those claiming by or through or under them, and that he is advised and believes that it would be a breach of his official bond and a violation of his official oath to issue any such certificates to complainant or the Texas Association.

(10) That William Preston, complainant, has no authority to stand in judgment in this suit; that the members of the Texas Association are the proper parties to this suit; and this suit is defective for want of such parties.

(11) That the settlers in the limits of Mercer colony are interested in the lands claimed, and that the bill is defective for the want of such parties.

(12) Pleading the statutes of limitations and staleness of demand, denying secrecy and fraud, but claiming open and notorious repudiation by the state of complainant's demands.

And the defendant denies conspiracy with the governor, denies having infringed the injunction in this case, and makes all the discovery that defendant finds possible in the premises.

To this answer a general replication is filed by the complainant. This statement of the pleadings, taken in connection with the full statement of the pleadings and facts as reported in the case of *Hancock* v. *Walsh,* to which reference is made, shows the issues presented to this court.    The evidence offered and admitted on this hearing is bulky and voluminous, and cannot be recapitulated here, even if necessary.   . The following may be taken as the substance, and it will be found sufficient to understand and support the decree allowed in the case.

The complainant has established the contract between the republic, through Sam Houston, president, and Charles Fenton Mercer, and his associates, as alleged in the bills; the entrance of Mercer upon the duties devolving on him under the contract; the organization of the Texas Association; the appointment of surveyors and colonization agents; the running of lines and surveys; the introduction of 119 families within the first year of the grant; the making of the survey of the boundary limits of the colony grant by April 1, 1845; the settlement of 1,256 families within the limits of the colony prior to October 25, 1848; the appointment of Mercer as chief agent and trustee for the association; the subsequent appointment of Hancock as chief agent; Hancock's death and the appointment of Preston, ratified by the association, as chief agent; the entrance of the gentlemen upon the performance of their duties as agents of the association, and the activity displayed by them, respectively, in furthering the objects and interests of the colony and the association; the employment of counsel, the expenditure of money, and the persistent applications made to the political department of the state of Texas for relief.   Further, the complainant has shown that Mercer, as agent, made reports, as required by

contract, up to and for the year 1847, to the government of Texas; that Mercer is dead long since, and that all his papers and documents, among which were copies of his correspondence and reports in relation to the Mercer colony, have been lost and destroyed.

In short, the substance of the original bill is established.

There are only two points questioned seriously as not yet proved:

(1) Preston's right to act as chief agent and represent the association.

(2) The proof of the settlement of 1,256 families prior to the expiration of the grant.

As to the first point it is shown that Hancock was chief agent, in accordance with the articles of association, with power to substitute; that he died, and in his last will and testament transferred his shares to Preston and appointed Preston chief agent. It is shown that Preston assumed the duties of chief agent, and that his assumption has been approved and ratified by the other shareholders. Any defect of Preston's authority to represent the association has been cured by ratification. It is elementary in the law of agency that ratification of the acts of an agent amounts to as much and has the same effect as an original appointment. The proof of the introduction and settlement of 1,256 families is made by Crockett's report. Under the act of February 2, 1850, Crockett was the sworn and bonded officer, and agent of the state to issue patents to such of the settlers of Mercer's colony as were intended to be relieved by the act. Under the law he could only issue certificates to such colonists as proved by their own oaths, supported by the oaths of two respectable witnesses, that they emigrated to Texas, and became citizens of the Mercer colony prior to October 25, 1848. Crockett's own sworn report shows that 1,256 families made such proof to his satisfaction, and that he issued certificates as required by the law. Now, it was covenanted in the contract between the republic and Mercer that all the unlocated lands lying in the limits of this colony grant at the date of the grant should be exclusively set apart and reserved for five years, for the use of Mercer and his associates, to be colonized by them under the contract.

The depositions of Pillons and others show that at the date of the contract there were very few, if any, locations within the Mercer colony limits. There is no direct evidence to show whether the 1,256 families, proved by Crockett to have settled prior to October 25, 1848, were all, or any of them, introduced by Mercer or the Texas Association. Nor is there any proof to show the negative. The families were there and settlers. They could only be there lawfully under Mercer and the Texas Association. In the absence of proof, it is a

strong presumption that they were settlers there lawfully; that is, under Mercer and the Texas Association, not as trespassers and squatters. Besides this presumption, I do not regard it as absolutely necessary that every settler who located in the Mercer colony should have been previously personally solicited and induced thereto by Mercer or his agents. The contractors could not have so contemplated. One settler would naturally induce others, and the advertisements and maps and advantages and improvements would certainly aid in the scheme of colonization and settlement.

The depositions offered by the defendant upon this subject (which are amenable to the charge of incompetency, as hearsay evidence, and though given full force as evidence) are not strong enough to rebut this presumption in favor of law and order. The witness knew, had heard, of no one who claimed to have been induced to settle by Mercer or his agents, or under the Mercer colony grant. And it might be noticed, under the law of 1850, it was not necessary, in order to receive the donation offered by the state, that they should claim under Mercer. And it is plausible to say that, under the hostile attitude evinced by the people of the state at that time towards the colonization contract, many settlers might have been deterred from claiming under obnoxious titles, particularly when such claim was wholly unnecessary.

The allegations in the amended bill of complainant are also, in the main, established, except in relation to the conspiracy alleged between the defendant and Gov. Roberts, and in relation to the charge of contempt for violation of the injunction heretofore issued in the case. Upon this last-mentioned matter the proof fully exonerates the defendant.

The defendant shows by the depositions of various witnesses, mostly old settlers, that Mercer and his associates had not complied with the various stipulations and details of the contract in many small matters, so far as the knowledge of the witnesses extended; but this evidence is negative, and at this late date it can hardly raise a presumption even of non-compliance. In relation to this it may be well to notice that by the terms of the contract a forfeiture or determination of the contract was only to result from non-performance, on the part of Mercer and his associates, in relation to the introduction of a certain number of families within certain fixed periods,—for instance, 100 families by May 1, 1845; 250 families within two years; and 150 families within each of the remaining three years the contract

was to run. And further, that no default or determination was to operate otherwise than prospectively. The defendant fails to show the truth of his charge in regard to the survey of 1845 and the manufacture of the map of that date.

The remaining allegations of defendant's answer—leaving out arguments and conclusions of law therein contained—may be considered as substantiated. The proceedings in the Navarro county court are proved, with the variance that the suit was brought in the name of A. C. Horton, acting governor, for the benefit of the people of Texas, instead of, as alleged, in the name of A. C. Horton, governor, for and on behalf of the state of Texas, and that there is no proof of service by publication or otherwise on the defendant. It is true that the record produced shows that service by publication was ordered by the court and by the sheriff, but it does not show how, where, or when publication was made, or that it was made at all. The recital in the alleged judgment of the words, "and it appearing to the court that service had been perfected," cannot cure the defect. As I understand the law, the record must show affirmatively that the forms of service provided by law have been complied with, before the judgment of a court, otherwise having jurisdiction, can have the force of the thing adjudged.

Certainly the insertion in the judgment of a few words cannot have the talismanic effect of supplying the want of service. I am not at all certain but that the many other glaring defects on the face of the record, so far as proved, or so ably argued by counsel, strike the entire proceedings in Navarro county with absolute nullity. The defects are most certainly very serious relative nullities.

Now, taking the facts as I have found them to be disclosed by the evidence, I am satisfied that the following propositions of law, as applicable in this case, are clearly maintainable:

(1) The contract made by the republic of Texas, acting by Samuel Houston, president, on the eighth day of January, 1844, with Charles Fenton Mercer, was valid and binding on the republic.

(2) That contract created an express trust in favor of Mercer and his associates of all the unlocated lands then lying within the limits fixed by the contract to secure the performance of the contract.

(3) That by the compact of annexation the state of Texas assumed all the obligations, liabilities, and duties, including those resulting from the express trust theretofore bearing on the republic of Texas in relation to said contract with Mercer.

(4) That under the constitution of the United States, and the resolutions

and compact of annexation, the state of Texas has been and is without power by any law to impair the obligation of said contract or the trust resulting therefrom.

(5) Neither lapse of time nor any defence analogous to the statute of limitations can be set up by the trustee of an express trust as a defence to his ability to execute the trust.

(6) That while the ordinance adopted by the convention in 1845, (Hartley's Dig. 84,) afterwards ratified by a vote of the people, may have conferred power upon the law officers of the state to sue for, and jurisdiction on the courts to force forfeitures on, the colonization contracts, yet that the proceedings had and the judgment rendered in the district court of Navarro county, in the years 1847 and 1848, wherein A. C. Horton, acting governor, for the benefit of the people of Texas, was plaintiff, and Charles Fenton Mercer and associates, unknown, were defendants, were absolutely null and void for want of legal notice to the defendants.

(7) That the state of Texas by law has never repudiated the contracts with Mercer, or the trust resulting therefrom.

(8) That the court of equity has jurisdiction to prevent by injunction the waste, alienation, or destruction of a trust estate.

(9) That while the circuit courts of the United States have no jurisdiction to entertain a suit against a state of the Union, they have jurisdiction of, and will entertain a suit brought by a proper party against, an officer of a state, who, under color of his office, but without lawful authority, is wasting, alienating, or destroying a trust estate, although the state may be the trustee and remain silent.

(10) That in such a suit, where the state is no party, and yet is declared to be the trustee of an express trust, the defendant is without right or interest to plead in defence a repudiation by the trustee, to shield himself from unlawful conduct.

The first five of these propositions of law are laid down by Judge Woods, well supported by authority, and, as I have shown, *supra,* are the law of this case. The sixth proposition is undisputed law. *Hollingsworth* v. *Barbour,* 4 Pet. 476; *Harris* v. *Hardeman,* 14 How. 343; see *Goodlove* v. *Gray,* 7 Tex. 483; *McCoy* v. *Crawford,* 9 Tex. 353; *Blossman* v. *Letchford,* 17 Tex. 647; *Hill* v. *Faison,* 27 Tex. 428; *Johnson* v. *Herbert,* 45 Tex. 304; and the case of *Treadway* v. *Eastburn,* lately decided, (not reported.) The seventh proposition is shown by an examination of the various laws of Texas cited on both sides in this case, and I might with safety go further than I have, and say that under section 10, art. 1, of the constitution of the United States, the state could pass no valid law impairing the obligations of Mercer's contract. The eighth and ninth propositions are fully sustained by the decision of the supreme court in the case of *Davis* v. *Gray,* 16 Wall. 203. The tenth proposition is a corollary legitimately following the decisions in *Davis* v. *Gray* and *Hancock* v. *Walsh.* The

fact is that these two last-mentioned cases furnish nearly the entire law of this case. At the same time I deem it proper to say that nearly every proposition involved herein, I believe, from the examination I have been able to make, and from the authorities cited in argument by the distinguished counsel on both sides who have aided in this case, can be and is fully sustained by Texas authority, as declared by the supreme court of the state.

Now, applying the law as I understand it to the facts of this case, I think it clearly follows that complainant is entitled to a decree in his favor embodying such relief as he has asked and the court has jurisdiction to give. He asks for an injunction restraining the defendant, as commissioner of the general land-office of the state, his servants, agents, employes, etc., from issuing, passing, or granting any certificates or patents for lands lying within the limits of the Mercer colony to any person or persons other than the complainant or the Texas Association, and persons holding and claiming under or in priority with the said association; and restraining the defendant, etc., from hindering and obstructing complainant in the execution and performance of the Mercer contract, and in obtaining the certificates and patents of lands to which the complainant and the said association are entitled under the terms and conditions of said contract. The relief is within the jurisdiction of the court, and is after the manner of the proceedings in equity. The complainant asks further for a mandatory injunction to restrain the defendant from refusing to issue to complainant patents and certificates for 1,376 sections of land to which complainant is entitled under the contract, by reason of settlers introduced thereunder, and to 1,376 sections of land to which he is also entitled under said contract by tendering in payment thereof $12 in coin and scrip to the amount of $640, or its equivalent in money, for each section, and restraining said defendant from hindering him from locating the said certificates and patents upon any of the vacant and unoccupied lands of Texas within or without the limits of the Mercer colony, etc. This relief, no matter how just, I conceive to be beyond the jurisdiction of the court in this case for want of proper parties.

The whole theory of this case is that the contract with Mercer created an express trust, which, by operation of law and compact, devolved upon the state of Texas; that the state of Texas is now the trustee, the Texas Association the *cestui que trust;* that the legal title is in the state, the equitable title in the association. It has been vehemently alleged by complainant and adjudged by this court that

the state is not a party to this suit. The relief asked is in the nature of specific performance of the contract, or, at least, amounts to a decree for title. For the court to grant such relief it is imperative that the party required to perform, or who holds the legal title, should be before the court. Pomroy, Specific Performance, § 483 *et seq.*; Daniell, Ch. 194, 196; Perry, Trust, §§ 873, 874. See Justice Field in 1 Sawy. 685. And authorities can be multiplied to any extent. It will be noticed, too, that under the contract, after the performance of certain conditions precedent, (with regard to survey and selection of sections,) it is the government of Texas that is to convey or cause to be conveyed the title to the lands surveyed and selected. To grant the relief asked would be to compel the conveyance of title from the state to complainant of unlocated and unsurveyed lands, and allow the location and survey of any of the vacant lands of the state, which I conceive to be wholly outside of the contract; and, besides, would be taking practical possession, under this and other injunctions asked, of the land-office of the state.

In *Hancock* v. *Walsh* Judge Woods says:

"This is not a suit against the state, and does not seek to deprive her of the power of disposing of her own lands in her own way, for the lands which the complainant seeks to appropriate are not the property of the state." 3 Woods, 366.

Under the act of May 12, 1846, (section 3952 of the Code of 1879,) which was in force at the institution of this suit, it was required that "every patent for land emanating from the state should be issued in the name and by the authority of the state, under the seal of the general land-office, and shall be signed by the governor and countersigned by the commissioner of the general land-office."

In the act of 1879, denominated by counsel as the "obstruction act," it is provided that before any certificate for land reserved by the commissioner of the land-office, in cases where the commissioner has doubts or where there is a suit to compel or restrain the commissioner in the issuance of certificates, shall have any force or effect, the same shall be submitted to and be countersigned by the governor of the state.

It is urged that this obstruction law must be disregarded, because passed since the institution of this suit, with a view to affect the remedies to be granted by the court, and that it impairs the vested rights of complainant under his contract. I am not prepared to say that complainant, under the Mercer contract, acquired any vested right as to the forms and manner in which the title of the republic

was to pass or be conveyed.   If he did he is remitted to the laws in force at the time of the making of the contract.   An examination of the laws of the republic, in force at the making of the contract, fails to show any authority for the commissioner to issue land certificates. Many other officers and boards could issue them, but not the commissioner.   The contract itself provides for no certificates to be issued by the commissioner.   As I view the matter, therefore, under the laws of Texas, to operate the conveyance of title emanating from the state to public lands, either by patent or certificates, the act of the governor of the state is necessary, and the governor is no party to this suit.

The case of *Davis* v. *Gray*, affirming *Osborne* v. *U. S. Bank*, on the subject of making, and requiring the state to be made, a party where the state is concerned, is very strong, and I feel bound to go as far as that case; but I must leave to the supreme court to go further, or declare the law that the courts of the United States can go further.

Article 11 of the amendments to the constitution of the several states was adopted in the interest of and for the protection of the several states.   To construe it so as to allow the property of a state to be alienated or conveyed in a suit against a subordinate official of the state, is not only to nullify the amendment, but to put the state in a worse plight than if the amendment had not been adopted, for without the amendment the state would always have her day in court.

The complainant also asks an injunction to restrain the defendant, as land commissioner of the state, from issuing any further patents and certificates for any of the vacant and unlocated lands of the state beyond and outside of the Mercer colony limits to any person whatsoever, until the just demands of the complainant arising under the Mercer contract and the public trust, created by the compact of annexation, to hold the public lands for the payment of the debts and liabilities of the republic, are fully compensated and satisfied.   This demand involves the proposition that the treaty or compact of annexation created such a trust in favor of the creditors of the republic as could be enforced in the courts of equity; in other words, that it contemplated that any creditor might sue the state and obtain a decree for the sale of sufficient of the public lands to satisfy his demand. I doubt if any such trust was contemplated or created, particularly in the face of the inhibition of the constitution of the United States as to the right to sue a state in the courts.   That a great public trust was created, that the public faith was pledged, that the state of Texas may be bound in morals and good faith to apply the public lands as stipulated in the treaty, I agree; but I doubt the power and authority

of the circuit court of the United States, sitting as a court of chancery, to enforce these obligations.

The learned solicitors for the defendant have, with great ingenuity and force, argued to the court several propositions that I will merely advert to. They claim that no injunction should issue in this case, as it would be a vain and useless order, so far as giving any relief to complainant is concerned. It does not seem so to me. Preventing the further waste of the trust estate, preventing further clouds from being thrown on complainant's equitable title, and preventing defendant from further obstructing complainant in the assertion of his rights, would seem considerable, valuable, and effective relief.

It is further said by the solicitors that complainant should be remitted to the political department of the state government for the relief his case demands. I do so remit him, but at the same time I grant the relief (as I am bound to do) that I find he is entitled to from the court, and the court aids him to protect his property until the conscience of the political department is moved, and the said department can see its way clear in the premises.

It has been urged, and, in fact, charged in the answer, that many innocent persons have acquired equitable titles to lands in the limits of the Mercer colony, and that to continue the injunction will operate a loss and hardship. No proof is made, but, taking it to be true, there is no suggestion that any of these equitable titles are of a higher nature or of earlier date than complainant's titles. It shows the more forcibly the necessity for the action of the political department of the state, but shows no sufficient reason for this court to deny complainant the relief that equity and good conscience require.

For these reasons, and many others that might be given, and well knowing that any errors that I may make, either in granting or in denying the full measure of relief, can and will be revised and corrected by the honorable, the supreme court of the United States, I consider it my duty to pass the accompanying decree. And it is so ordered.