GENERAL INV. CO. v. LAKE SHORE & M. S. RY. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 16, 1918.)

No. 2939.

1. REMOVAL OF CAUSES ⬩106—REMAND—WAIVER OF RIGHT.
   If general federal jurisdiction exists, the want of local jurisdiction or venue in the particular federal court to which a cause has been removed is waived, where the plaintiff, after the removal, without challenging such' jurisdiction by motion to remand or otherwise, consents to and accepts such jurisdiction by affirmative acts in recognition thereof and invoking its exercise.

2. COURTS ⬩12(3)—JURISDICTION—FOREIGN CORPORATIONS—SUBJECTION TO STATE PROCESS.
   A foreign corporation is not amenable to process in a court of another state, unless it is actually doing business in that state of such character and extent as to warrant the inference that it has subjected itself to the jurisdiction and laws of such state and the process is served on an authorized officer or agent.

3. REMOVAL OF CAUSES ⬩112—JURISDICTION OF PARTIES ACQUIRED—VALIDITY OF SERVICE.
   The validity of the service of process in a state court may be questioned after removal to a federal court; the sheriff's return not being conclu-ʻ·sive, and the question of jurisdiction being one for the ultimate deter-.mination of the federal court.

4. CORPORATIONS ⬩642(4½)—FOREIGN CORPORATIONS—"DOING BUSINESS" IN STATE.
   The New York Central & Hudson River Railroad Company, a New York corporation, owned no road and maintained no office or agent in Ohio, but its road was operated in connection with that of the Lake Shore & Michigan Southern Railway Company, which ran through that state; through trains over the two lines being run between New York and Chicago. Agents for both companies sold tickets good over either or both lines under the general name of "New York Central Lines"; the proceeds being divided at periodical settlements according to the service rendered by each company. Held, that the Central Company did not do business in Ohio, and that a court of that state did not obtain jurisdic-·ʻtion over it by service of process on an agent of the Lake Shore Company.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

5. EQUITY ⬩362—GROUND FOR DISMISSAL—DEFECTS AS TO PARTIES.
   A court of equity cannot make a decree between the parties before it which necessarily affects the rights of an absent person, who is in such case an indispensable party; but a bill is not to be dismissed in its entirety, because of the absence of a person who is indispensable to granting all the relief prayed for, if there is any. separable matter as to which complete relief may be given, not affecting the rights of such absent person.

6. CORPORATIONS ⬩201—SUIT TO ENJOIN VOTING OF STOCK—PARTIES.
   A stockholder in a corporation is an indispensable party to a suit to enjoin him from voting his stock at a stockholders' meeting.

7. CORPORATIONS ⬩584—SUIT TO ENJOIN MERGER—PARTIES.
   To a suit by a stockholder to enjoin the corporation from entering into an illegal merger with another corporation, such other corporation need not be made a party, where it has acquired. no vested contract right in the proposed consolidation, although it may own the majority of the stock of the first corporation.

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. CORPORATIONS ⚖189(9)—SUIT BY STOCKHOLDER—PARTIES.

To a suit by a stockholder for the appointment of a receiver of stocks of subsidiary companies alleged to be held illegally by the corporation, and for the disposition of such stocks another stockholder, although owning the majority interest, is not an indispensable party.

9. COURTS ⚖351½—MOTION TO DISMISS—DISMISSAL AS TO PART OF BILL.

A motion to dismiss made under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi), going to the entire bill, as in case of a demurrer under the old practice, must fail, if any part of the bill is good against it; but where there is a defect of parties, which would prevent the court from granting a part of the relief prayed for, the court may properly dismiss so much of the bill as relates to that matter.

10. CORPORATIONS ⚖189(11)—SUIT BY STOCKHOLDER—SUFFICIENCY OF BILL.

A bill by a stockholder to enjoin the corporation from doing an illegal act *held* sufficient on its face against a motion to dismiss.

11. CORPORATIONS ⚖189(11)—STOCKHOLDERS' SUITS—SUFFICIENCY OF BILL.

Equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv), prescribing the requisites of a stockholder's bill, relates only to suits "founded on rights which may properly be asserted by the corporation," and does not apply to a bill by a stockholder in his own right against the corporation to enjoin it from doing an illegal act.

12. CORPORATIONS ⚖584—SUITS BY STOCKHOLDER—ADEQUATE REMEDY AT LAW.

Gen. Code Ohio, § 9034, providing the compensation which shall be paid for the stock of a stockholder who refuses to exchange his stock for that of a consolidated company, is intended to apply only to lawful consolidations, and does not afford an adequate remedy to a stockholder who seeks in advance to restrain the corporation from entering into an illegal consolidation.

13. COURTS ⚖347—SUPPLEMENTAL BILL—CHANGE IN NATURE OF SUIT.

Under equity rule 34 (198 Fed. xxviii, 115 C. C. A. xxviii), providing that the court may permit a complainant to file a supplemental bill "alleging material facts occurring after his former pleading," if a complainant's original bill is sufficient to entitle him to one kind of relief and facts subsequently occur to entitle him to other and more extensive relief, he may have such relief by setting out the new matter in the form of a supplemental bill, even though the nature of the suit would in effect be thereby changed.

14. QUIETING TITLE ⚖12(3)—CLOUD ON TITLE—RIGHT TO MAINTAIN SUIT—POSSESSION.

The general equity rule that a bill to remove cloud from title can only be filed by one in possession does not prevent the maintenance of such a bill by one not in possession, where there are other grounds for equitable relief.

15. QUIETING TITLE ⚖12(3)—SUIT TO REMOVE CLOUD—POSSESSION.

Where the legal title to the property of a corporation and its possession have passed from it to a consolidated company through an illegal consolidation, a stockholder is not debarred from maintaining a suit to have the proceedings by which the consolidation was effected set aside as a cloud upon the title of the corporation by the fact that neither he nor the corporation is in possession.

16. APPEAL AND ERROR ⚖959(2)—EQUITY ⚖297—SUPPLEMENTAL BILL—DISCRETION OF COURT—REVIEW.

The granting or refusing of leave to file a supplemental bill rests in the discretion of the trial court, and is not reviewable by an appellate court, unless there has been a gross abuse of discretion; and matters which would not have constituted such a want of equity as to prevent the maintenance of an original bill may properly be considered in de-

termining whether, in the exercise of sound judicial discretion, leave should have been granted to file a supplemental bill as a matter of grace.

17. EQUITY ☞297—LEAVE TO FILE SUPPLEMENTAL BILL—DISCRETION OF COURT.

Complainant acquired 5 shares of stock of defendant railroad company, out of 499,961 shares outstanding, two months after the date of an agreement for consolidation between defendant and a number. of other companies, which agreement was afterwards approved by defendant's stockholders; only 77 shares, besides complainant's, being voted against it. Under the laws of the state, dissenting stockholders were entitled to receive for their stock its highest market value during the preceding two years. After the consolidation was effected, the consolidated company executed mortgages on its property, securing bonds to the amount of $365,000,000. A bill had previously been filed by complainant to enjoin the consolidation, and after it was effected complainant asked leave to file a supplemental bill to set it aside as a cloud on defendant's title. The property within the jurisdiction of the court, and which would be affected by its decree, was only a part of its line. *Held* that, under all the circumstances, the court did not abuse its discretion in denying leave to file the supplemental bill.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Suit in equity by the General Investment Company against the Lake Shore & Michigan Southern Railway Company, the Central Trust Company of New York, the New York Central & Hudson River Railroad Company, William A. Read, Henry Evans, and Willis D. Wood. Decree for defendants, and complainant appeals. Modified.

For opinion below, see 226 Fed. 976.

F. A. Henry, of Cleveland, Ohio, for appellant.

Doyle, Lewis, Lewis & Emery, of Toledo, Ohio (C. T. Lewis, of Toledo, Ohio, Walter C. Noyes, of New York City, and Samuel H. West, of Cleveland, Ohio, of counsel), for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This suit was commenced by a petition in equity filed in the Court of Common Pleas of Cuyahoga County, Ohio, by the Central Investment Company, a Maine corporation, against The Lake Shore & Michigan Southern Railway Company, a, corporation of New York, Pennsylvania, Ohio, Michigan, Indiana and Illinois (hereinafter called the Lake Shore Company), The New York Central & Hudson River Railroad Company, a New York corporation (hereinafter called the New York Central Company), the Central Trust Company of New York, and three individual defendants, Read, Evans and Wood, for the primary purpose of enjoining the consolidation of the Lake Shore and New York Central Companies, with others, into a single corporation. Summons was issued for the Lake Shore and New York Central Companies and returned as served upon each. No process was issued for the Trust Company or individual defendants; and they have never appeared herein. Before

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the return day the New York Central Company appeared specially and moved that the sheriff's return upon it be set aside. This motion was overruled; as was the plaintiff's motion for a temporary injunction.

Thereafter, the Lake Shore and New York Central Companies, with The New York Central Railroad Company (purporting to be the consolidated railroad corporation created meanwhile under the laws of New York, Pennsylvania, Ohio, Michigan, Indiana and Illinois), appeared specially and filed their petition for the removal of the cause to the United States District Court below. This removal was ordered by the Common Pleas Court.

After such removal, the New York Central Company, appearing specially in the District Court, moved to set aside the return of the the summons against it and quash the service. The Lake Shore Company also moved to dismiss the plaintiff's petition. After a hearing on the motion of the New York Central Company it was adjudged that the service and summons against it be set aside, and that it go hence, with costs. Subsequently the plaintiff moved for leave to file a supplemental bill making new parties defendant; also for "substituted process" upon the New York Central Company and others. More than two months thereafter the plaintiff moved that the cause be remanded to the state court. This motion was denied. Subsequently a decree was entered denying the plaintiff's motion for substituted service, and leave to file a supplemental bill; granting the Lake Shore Company's motion to dismiss; and dismissing the suit at the plaintiff's costs; from which final decree the plaintiff has appealed.

[1] 1. *Motion to remand.* The petition for removal, which alleged diversity of citizenship between the plaintiff and all defendants and the requisite jurisdictional amount, was primarily based on a separable controversy with the removing defendants arising under the laws of the United States. The plaintiff, while not denying the general grounds of Federal jurisdiction, insists that the suit was improperly removed to the District Court because of want of local jurisdiction in such court due to the fact that the New York Central Company was not an inhabitant of the district.

It is unnecessary to determine whether, under the rule of Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, In re Moore, 209 U. S. 491, 28 Sup. Ct. 585, 52 L. Ed. 904, 14 Ann. Cas. 1164, Louisville Railroad v. Fisher (6th Cir.) 155 Fed. 68, 83 C. C. A. 584, 11 L. R. A. (N. S.) 926, Turk v. Illinois Central Railroad (6th Cir.) 218 Fed. 315, 134 C. C. A. 111, and other similar cases, there was, in the first instance, a want of local jurisdiction in the court below. If general Federal jurisdiction exists, the want of local jurisdiction or venue in the particular Federal court to which a cause has been removed, is waived, where the plaintiff, after the removal, without challenging such jurisdiction by motion to remand or otherwise, consents to and accepts such jurisdiction by affirmative acts in recognition thereof and submission thereto. In re Moore, 209 U. S. supra, at page 496, 28 Sup. Ct. 585, 52 L. Ed. 904, 14 Ann. Cas. 1164; Western Loan Co. v. Mining Co., 210 U. S. 368, 371, 28 Sup. Ct. 720, 52 L. Ed. 1101; Kreigh

v. Westinghouse, 214 U. S. 249, 253, 29 Sup. Ct. 619, 53 L. Ed. 984; Louisville Railroad v. Fisher (6th Cir.) 155 Fed. supra, at page 69, 83 C. C. A. 584, 11 L. R. A. (N. S.) 926; Garrett v. Louisville Railroad (6th Cir.) 197 Fed. 715, 117 C. C. A. 109. Such objection to the want of venue must be raised at the first opportunity. calling for election between insisting on the objection or taking inconsistent action. Erie Railroad v. Kennedy (6th Cir.) 191 Fed. 332, 334, 112 C. C. A. 76.

In the instant case, the plaintiff, after the removal, without anywise challenging the jurisdiction of the District Court, entered into an agreement as to using therein certain testimony relating to the validity of the service upon the New York Central Company; participated in the hearing therein on the motion to set aside such service; and subsequently, more than a month after such service had been set aside and while the Lake Shore Company's motion to dismiss was pending, filed therein its motion for leave to file a supplemental bill, and two motions for "substituted process" upon the New York Central Company and others, under section 57 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1102 [Comp. St. 1916, § 1039]). These several acts on its part were clear and unequivocal recognitions of the jurisdiction of the District Court, indicating its willingness that the matters in controversy should be tried by that court; its motions for leave to file a supplemental petition and for "substituted process" not merely tacitly consenting to accept its jurisdiction, but affirmatively appealing to its aid and invoking the exercise of such jurisdiction. In re Moore, 209 U. S. supra, at page 496, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; Clark v. Southern Pacific Company (C. C.) 175 Fed. 122, 127. Such consent to the jurisdiction of the District Court and waiver of objection to its want of venue, if any originally existed, could not thereafter be revoked; and the motion to remand, filed more than two months thereafter, was hence properly denied. In re Moore, 209 U. S. supra, 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; Clark v. Southern Pacific Co. (C. C.) 175 Fed. 122, supra.

[2] 2. *Service on the New York Central Company.* The sheriff of Cuyahoga County made return that he had served the summons on the New York Central Company upon "W. A. Barr, Regular Ticket Agent, in charge of the business of said company, the president or other officer not found in my county." The motion of the New York Central Company to set aside this service, was based primarily upon the grounds that it had never done business in Ohio or become subject to service of process therein, and that Barr was not its agent or in charge of its business.

[3] A foreign corporation is not amenable to personal process in a court of another state unless it is doing business in such state and such process is served upon an authorized officer or agent. Peterson v. Chicago Railway, 205 U. S. 364, 390, 394, 27 Sup. Ct. 513, 51 L. Ed. 841; Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 441, 30 Sup. Ct. 125, 54 L. Ed. 272; Herndon-Carter Co. v. Norris, 224 U. S. 496, 499, 32 Sup. Ct. 550, 56 L. Ed. 857; Philadelphia Railway v. McKibbin, 243 U. S. 264, 265, 37 Sup. Ct. 280, 61 L. Ed. 710; and cases therein cited. To render it so amenable there must be an actual doing

of business within the state of such character and extent as to warrant the inference that it has subjected itself to the jurisdiction and laws of such state and is there present subject to the process of its courts. St. Louis Railway v. Alexander, 227 U. S. 218, 226, 227, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; International Harvester Co. v. Kentucky, 234 U. S. 579, 583, 586, 34 Sup. Ct. 944, 58 L. Ed. 1479; Washington-Virginia Railway v. Real Estate Trust, 238 U. S. 185, 186, 35 Sup. Ct. 818, 59 L. Ed. 1262; Philadelphia Railway v. Mc-Kibbin, 243 U. S. supra, at page 266, 37 Sup. Ct. 280, 61 L. Ed. 710. The validity of the service of process in a state court may, furthermore, be questioned after removal to a Federal court; the sheriff's return not being conclusive and the question of jurisdiction being one for the ultimate determination of the Federal court. Mechanical Appliance Co. v. Castleman, 215 U. S. supra, at 441, 442, 443, 30 Sup. Ct. 125, 54 L. Ed. 272, and cases therein cited.

[4] The testimony established the following material facts: The New York Central Company was a New York corporation. It had no line of railroad in Ohio and maintained no office or place of business therein. Both it and the Lake Shore Company were members of a group or system, comprising several railroad companies included under the general designation of the "New York Central Lines." Each of these several companies commonly marked its rolling stock and equipment with its own initials and the words "New York Central Lines"; issued its tickets on paper water marked with these words; printed them on its time-tables; and generally used them as a trade mark on available matter. The same person was President of the New York Central and Lake Shore Companies. The New York Central Company's railroad connected at Buffalo, New York, with that of the Lake Shore Company, forming a continuous line from New York City to Chicago, Illinois, extending through Cleveland, in Cuyahoga County, Ohio. Through passenger rates were, by agreement, established over these connecting lines; and passenger trains run over them from Cleveland and western points to New York City, without change of passenger cars. The Lake Shore Company maintained a city ticket office in Cleveland, on the door of which the words "New York Central Lines" were painted. It there sold coupon tickets for continuous passage over its line and those of the New York Central Company to points on the latter. These tickets recited that they were issued by the Lake Shore Company and that in selling tickets for passage over other lines it acted only as agent. They bore at the top the name of the New York Central Company, for the purpose of validating them as authorized tickets issued by the Lake Shore Company on account of the New York Central Company. Their date stamp read: "New York Central Lines (date of issuance) City Ticket Office, Cleveland, O." They were honored by the New York Central Company for the transportation of passengers from Buffalo to the points of destination; and upon an accounting the New York Central Company received from the Lake Shore Company the proportionate part of the fares collected for the transportation over its lines; and so, reciprocally, as to like tickets issued by the New York Central Company for

transportation to points on the lines of the Lake Shore Company. The Lake Shore Company had also, by agreement with other railroad companies throughout the country not included in the "New York Central Lines," established through passenger rates to various points on the lines of such other companies, and regularly issued coupon tickets for continuous passage to such points, which were in all respects similar to those issued for passage to points on the New York Central and other "New York Central Lines," bearing likewise the name of the company on whose line the point of destination was located, and were honored by these other companies and accounted and settled for in exactly the same manner. W. A. Barr was employed as City Ticket Agent of the Lake Shore Company in its Cleveland office. He was not in the employment of the New York Central Company, received no compensation from it, and did not report or account to it; all accounting and settlements being made between the two companies. As such ticket agent, he regularly sold coupon tickets, as above described, for passage over the lines of the Lake Shore and of the New York Central Company and other companies not included in the "New York Central Lines."

From these facts it appears that the New York Central Company itself transacted no business in Ohio. The plaintiff's contention that it was nevertheless engaged in business therein, through the agency of the Lake Shore Company as an affiliated member of the "New York Central Lines" and in the sale of tickets in its behalf, and that Barr thereby became its agent for the service of process, is directly ruled by Peterson v. Chicago Railway, 205 U. S. supra, at page 394, 27 Sup. Ct. 513, 51 L. Ed. 841, which, in its essential facts, is almost identical with the instant case. There a domestic and a foreign railroad corporation, owning lines of railroad which connected at the State line, were associated as constituent elements of the "Rock Island System," advertised as such in their time-tables and elsewhere. The foreign corporation owned the majority of the stock in the domestic corporation, with the power of controlling its management through the election of directors and officers. The domestic corporation, however, transacted its business within the state as a separate legal entity, under the control and management of its own officers and agents. And, although the two companies had to a certain extent common agents and employees, their control and payment was kept distinct while engaged in the separate service of each. It was held, under these circumstances, that the foreign corporation was not, in the purview of the law, doing business within the State, either through the agency of the domestic corporation or otherwise; that a ticket agent employed by the domestic corporation in selling tickets good upon its own line and that of the foreign corporation, transacted such business as the agent of the domestic corporation merely; and that an attempted service of process upon such ticket agent was not a service upon an agent of the foreign corporation transacting its business within the State in such sense as to give jurisdiction over it.

The doctrine of this case was recently re-affirmed and emphasized in Philadelphia Railway v. McKibbin, 243 U. S. supra, at page 268, 37

Sup. Ct. 280, 61 L. Ed. 710, in which it was held that the sale by a local carrier within a State of through tickets over the line of a foreign connecting carrier did not involve a doing of business within the State by such connecting carrier, otherwise, "nearly every carrier in the country would be 'doing business' in every State"; and that even if the defendants' "subsidiary companies" did business within the State, this would not, under the authority of the Peterson case, warrant a finding that it did business there.

The case of St. Louis Railway v. Alexander, 227 U. S. supra, at page 228, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77, upon which the plaintiff mainly relies, is essentially different from the instant case. There two foreign railroad corporations, whose lines were combined together as a continuous line under the designation of the "Cotton Belt Route," maintained in the State in which suit was brought against one of the constituent corporations, a joint office of the "Cotton Belt Route" and of both constituent lines, with a joint freight agent of the two lines, who, as the authorized agent of the defendant, attended to the settlement of claims against it and presumably other matters of a kindred character, undertaking to act for and represent it, and negotiating directly for and in its behalf; a situation which was held to constitute a transaction of business in behalf of the defendant by its authorized agent in such manner as to bring it within the State and make it subject to the service of process. Here, however, the essential element of an authorized resident agent, directly acting for and representing the defendant in the conduct of its business, is entirely lacking.

We hence necessarily conclude, under the foregoing authorities, that the New York Central Company was not, in the purview of the law, doing business in Ohio; that the service of the summons upon Barr was not upon an agent transacting its business therein in such sense as to give jurisdiction over it; and that the court below correctly set aside such service and summons and adjudged that it go hence.

We therefore need not consider the alternative contention of the New York Central Company, that in any event the service upon Barr was invalid, under section 11288 of the General Code of Ohio, because not made upon him in a county in which its railroad was located or through which it passed.

3. *Appearance by the New York Central Company.* Four months after the service on the New York Central Company had been set aside, and before the determination of the Lake Shore Company's motion to dismiss, the plaintiff filed its motion to remand to the state court. It now insists in this court (evidently for the first time), that a certain brief, which appears in the transcript without explanatory evidence, but was apparently submitted in the court below in opposition to this motion, was submitted by counsel in behalf of the New York Central Company as one of the co-defendants, and constituted a voluntary appearance by it. This brief dealt with motions to remand the present case and another case in which the Lake Shore Company, but not the New York Central Company, was a defendant, and was entitled in both cases. It was signed as "Solicitors for Defendants" by the coun-

sel who had previously represented the New York Central Company on its motion to set aside the service; who then represented the Lake Shore Company in opposition to the motion to remand, and also, it appears, on its pending motion to dismiss the present case. In discussing the right to remove the present case before service of process upon all defendants, it was stated that both at the time of filing the petition for removal and then, the Lake Shore and New York Central Companies "were and are the only defendants in the suit." On the other hand, it was elsewhere distinctly stated that the court had indicated by its previous order that the New York Central Company was never legally a defendant "and is not now a defendant in the action," which "now stands as one brought against the Lake Shore alone"; in the concluding summary it was repeated that "the Lake Shore is now the only real or actual defendant in both cases"; and in the last sentence, it was urged, not only that the motion to remand should be overruled, but that, for the reasons set forth in their former brief, the motion of the Lake Shore Company to dismiss this case (which was based primarily upon the absence of the New York Central Company as an indispensable party), should be granted.

Viewing this brief in its entirety, in the light of the existing situation and of its manifest purposes, we think the reasonable inference is that it was submitted by these solicitors in behalf of the Lake Shore Company alone, the only defendant then before the court, and not submitted, or intended to be, in behalf of the New York Central Company, thereby not merely reinstating it as a defendant, after succeeding, four months before, by a vigorous contest, in obtaining its dismissal, but also destroying the principal ground of the Lake Shore Company's motion to dismiss, upon which they were then insisting; the plural word "Defendants" with which it was signed having been used, it would seem, either through inadvertence or typographical error, or as indicating their representation of the Lake Shore Company as the defendant in the two cases. We hence conclude that it did not constitute a voluntary entry of appearance by the New York Central Company herein.

4. *Dismissal of original petition.* The original petition was filed December 8, 1914. Its broad allegations, so far as now material, may be thus summarized: The plaintiff had been the owner, since June 27, 1914, of 5 shares of $100 each of the capital stock of the Lake Shore Company, out of a total outstanding issue of 499,961 shares; and, since February 24, 1914, of 300 like shares of the capital stock of the New York Central Company, out of a total of 2,555,810.66 shares. The Lake Shore Company, had, for many years, owned a majority or all of the capital stock of various other railroad and transportation companies incorporated under the laws of New York, Pennsylvania, Ohio, Indiana and Illinois. The New York Central Company had, for many years, owned, in violation of law, a majority, namely 452,892 shares, of the capital stock of the Lake Shore Company; and a majority or all of the capital stock of other railroad and transportation companies incorporated under the laws of Michigan and New York. The several subsidiary companies whose controlling stock was thus

held by the Lake Shore and New York Central Companies owned various lines which were parallel and naturally competing with those of the Lake Shore, New York Central and other subsidiary companies, in local, interstate and foreign commerce. Their control had been acquired in order to restrain such commerce and suppress competition therein, and had accomplished such purpose; and if the Lake Shore Company continued its holding of the controlling stock in its subsidiary companies its property and corporate entity would be subjected to penalties and forfeitures under various provisions of law. The New York Central Company, through its own stock ownership and that of the Lake Shore Company and by the election of directors, dominated and controlled, directly and indirectly, the affairs and management of the Lake Shore Company and of each of their several subsidiary companies; thereby concentrating such control in one ownership. To further perfect this combination it had deposited its stock in the Lake Shore Company to secure an issue of its collateral trust bonds, under an indenture contemplating the consolidation of the two companies, and had executed a mortgage securing an issue of its consolidation bonds to be used in retiring such collateral trust bonds. And as a final step in illegally consolidating the Lake Shore and New York Central Companies, the boards of directors of the New York Central and Lake Shore Companies and of their subsidiary companies had recently signed a proposed agreement of consolidation (the date of which was not recited), contemplating a merger of all of such companies. By its terms these several companies were to be consolidated in a single corporation, styled The New York Central Railroad Company, having a capital stock of 3,000,000 shares of $100 each, the majority of which was to be issued in exchange for stock in the consolidating companies; the stock held by the New York Central Company in the Lake Shore Company was to be cancelled; the minority stockholders in the Lake Shore Company were to receive for each of their shares five shares in the consolidated corporation, aggregating 235,345 shares; and the Lake Shore collateral trust bonds were to be exchanged for equal amounts of the consolidation bonds of the New York Central Company. This proposed consolidation of companies owning parallel and competing lines of railroad was a violation of the Federal Anti-Trust Act and of various provisions of the constitutions and laws of the several states, and otherwise illegal; and if approved by the stockholders of the several companies inextricable confusion would result, a multiplicity of annulment suits would be required, and penalties and forfeitures would arise against the companies. At a meeting of the stockholders of the New York Central Company, held July 20, 1914, the consolidation had been approved by a vote of two-thirds of the outstanding stock; the plaintiff having voted and protested against it. A meeting of the stockholders of the Lake Shore Company had been called for December 22, 1914 (two weeks after the filing of the petition), and the New York Central Company would, unless restrained, vote its controlling stock in the Lake Shore Company in favor of the consolidation. After this meeting had been called the defendants Read, Evans and Wood, acting as a committee for minority stockholders in the Lake Shore Com-

pany, had instituted litigation to enjoin the proposed consolidation; whereupon such litigation had been settled and dismissed and the Lake Shore Company had entered into an illegal agreement with the committee and the Central Trust Company by which the committee was to deposit with the Trust Company minority stock for which the Lake Shore Company was to pay $500 per share, and an additional sum of $200,000.

The plaintiff filed its petition in behalf of itself and all other similarly situated stockholders in the Lake Shore Company joining therein, and, alleging that it had no adequate remedy at law, prayed: that the New York Central Company be enjoined from voting its stock in the Lake Shore Company in favor of the consolidation agreement, or otherwise, and the Lake Shore Company enjoined from counting such stock or permitting it to be voted; that the Lake Shore Company be enjoined from entering into the proposed agreement and consolidation, and from making any consolidation whatever with the New York Central Company unless both were divested of their control of subsidiary companies; that the Lake Shore Company be enjoined from purchasing its stock from the Read Committee, and any acquisition thereof decreed illegal and void; that receivers be appointed of the stock owned by the Lake Shore Company in its several subsidiary companies, and the same placed in the hands of independent trustees or sold, or their competitive management otherwise assured; that a receiver be appointed of the equity of the New York Central Company in the stock of the Lake Shore Company, and the same placed in the hands of independent trustees to be managed in the interest of the Lake Shore Company in competition with all other lines; that the New York Central Company be enjoined from issuing its consolidation bonds in exchange for Lake Shore collateral trust bonds; that if, pending the action, the proposed consolidation should be effected, the same be set aside; and for general relief.

The motion of the Lake Shore Company to dismiss, which was directed to the entire petition, was based primarily upon the ground that the New York Central Company was an indispensable party, materially interested in the relief prayed, whose rights were so involved that a determination of the cause without its appearance would be inconsistent with equity; also, in general terms, upon want of equity on the face of the petition, and adequacy of remedy at law.

[5] (1) It is a general rule in equity that all persons materially interested, either legally or beneficially, in the subject matter of a suit, are to be made parties to it; that the court may be enabled to make a complete decree, prevent future litigation, and make it certain that no injustice is done, either to the parties before it or to others interested in the subject matter, by a decree granted upon a partial view of the real merits. Gregory v. Stetson, 133 U. S. 579, 586, 10 Sup. Ct. 422, 33 L. Ed. 792; Minnesota v. Northern Securities Co., 184 U. S. 199, 235, 22 Sup. Ct. 308, 46 L. Ed. 499; Story's Eq. Plead. § 72. No court can adjudicate directly upon the rights of a person who is not actually or constructively before it. Mallow v. Hinde, 12 Wheat. 193, 198, 6 L. Ed. 599; Shields v. Barrow, 17 How. 129, 140, 15 L. Ed. 158;

Gregory v. Stetson, 133 U. S. supra, at page 586, 10 Sup. Ct. 422, 33 L. Ed. 792; Taylor v. Southern Pacific Co. (C. C.) 122 Fed. 147, 152 (Lurton, Circuit Judge). Nor can it make a decree between the parties before it which necessarily affects the rights of an absent person; who is, in such case, an indispensable party. Shields v. Barrow, 17 How. supra, at page 141, 15 L. Ed. 158; Barney v. Baltimore City, 6 Wall. 280, 284, 18 L. Ed. 825; Gregory v. Stetson, 133 U. S. supra, at page 587, 10 Sup. Ct. 422, 33 L. Ed. 792; New Orleans Water Works v. New Orleans, 164 U. S. 471, 489, 17 Sup. Ct. 161, 41 L. Ed. 518; Waterman v. Bank Co., 216 U. S. 33, 48, 30 Sup. Ct. 10, 54 L. Ed. 80. And it is hence the established practice of courts of equity to dismiss a bill, even *sua sponte,* if it appears that to grant the relief prayed would injuriously affect persons materially interested in the subject matter who are not parties to the suit. Minnesota v. Northern Securities Co., 184 U. S. supra, at page 235, 22 Sup. Ct. 308, 46 L. Ed. 499.

A bill is not, however, to be dismissed in its entirety because of the absence of a person who is indispensable to granting all the relief prayed, if there is any separable matter as to which complete relief may be given, not affecting the rights of such absent person. New Orleans Water Works v. New Orleans, 164 U. S. supra, at page 480, 17 Sup. Ct. 161, 41 L. Ed. 518 (inferentially); Waterman v. Bank Co., 215 U. S. supra, at page 49, 30 Sup. Ct. 10, 54 L. Ed. 80; Davis v. Davis (C. C.) 89 Fed. 532, 538. And see: Judicial Code, § 50 (formerly R. S. § 737 [Comp. St. 1916, § 1032]); Cole Mining Co. v. Water Co., 1 Sawy. 470, 6 Fed. Cas. 67, and Cole Mining Co. v. Water Co., 1 Sawy. 685, 6 Fed. Cas. 72.

[6] Applying these principles to the instant case, it is clear that the New York Central Company was an indispensable party to granting so much of the relief prayed as sought to enjoin it from voting its stock in the Lake Shore Company, and, in effect the same thing, to enjoin the Lake Shore Company from counting such stock or permitting it to be voted; to appoint a receiver of its equity in such stock and direct the disposition and management thereof; and to enjoin it from issuing its consolidation bonds in exchange for Lake Shore collateral trust bonds: the relief sought as to each of these matters being of a character which, necessarily, would directly affect its rights and property interests, and hence under the well settled rules above stated, could not be granted by the court in its absence. A stockholder in a corporation is an indispensable party to a suit seeking to enjoin him from voting his stock at a stockholders' meeting. Taylor v. Southern Pacific Co. (C. C.) 122 Fed. supra, at page 152.

The Read Committee, if not the Trust Company also, were, furthermore, indispensable parties to granting so much of the relief prayed as sought to enjoin the Lake Shore Company from carrying out its agreement with them for the purchase of its stock and to set aside any acquisition thereof. Gregory v. Stetson, 133 U. S. supra, at page 585, 10 Sup. Ct. 422, 33 L. Ed. 792; New Orleans Water Works v. New Orleans, 164 U. S. supra, at page 479, 17 Sup. Ct. 161, 41 L. Ed. 518; Lengel v. Smelting Co. (C. C.) 110 Fed. 19, 22.

[7] The New York Central Company was not, however, an indispensable party to so much of the petition as sought to enjoin the Lake Shore Company itself from entering into the proposed consolidation; which was alleged to be illegal under various provisions of law, entirely independent of the ownership and voting of the controlling stock held by the New York Central Company. In a suit by a stockholder to enjoin a corporation in which he holds stock from entering into an illegal merger with another corporation, such other corporation need not be made a party; its interest being entirely remote. Blatchford v. Ross, 54 Barb. (N. Y.) 42, 47. When the original petition was filed the consolidation agreement had not been made effective by vote of the stockholders of the Lake Shore Company, as required by section 9028 of the General Code of Ohio. Therefore the New York Central Company had acquired no vested contract right in the proposed consolidation; and its mere expectancy that the Lake Shore Company would enter into such agreement was a wholly prospective interest, of a remote and non-justiciable character, which did not entitle it to be heard, in the capacity of a contracting party, in litigation seeking to enjoin the Lake Shore Company from entering on its own account, into such consolidation, or render it an indispensable party thereto. Nor was it indispensable to such litigation in its capacity as a stockholder in the Lake Shore Company; that company itself under the well settled general rule, representing its individual stockholders in the defense of suits involving its corporate rights and functions. Taylor v. Southern Pacific Co. (C. C.) 122 Fed. supra, at page 153. And see Blatchford v. Ross, 54 Barb. (N. Y.) supra, at page 48.

[8] So too the New York Central Company was not an indispensable party to so much of the petition as sought the appointment of a receiver of the stocks held by the Lake Shore Company in its subsidiary companies, and decrees for their disposition and management; the indirect interest of the New York Central Company in these matters as a stockholder in the Lake Shore Company being likewise represented by that Company.

[9] The motion to dismiss was, however, directed to the entire petition. It was formerly an established rule of equity practice that a demurrer to an entire bill must fail if any part of the bill was good against it, although if limited to the defective parts of the bill it would have been sustained. Livingston v. Story, 9 Pet. 632, 658, 9 L. Ed. 255; Buffington v. Harvey, 5 Otto, 99, 100, 24 L. Ed. 381; Marshall v. Vicksburg, 15 Wall. 146, 149, 21 L. Ed. 121; Pacific Railroad v. Missouri Railroad, 111 U. S. 505, 520, 4 Sup. Ct. 583, 28 L. Ed. 498; Stewart v. Masterson, 131 U. S. 151, 158, 9 Sup. Ct. 682, 33 L. Ed. 114; Duckworth v. Appostalis (D. C.) 208 Fed. 936, 937. And since the promulgation of equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi) abolishing demurrers to bills in equity and substituting therefor motions to dismiss, it necessarily follows that such motions are to be governed by a like rule of practice. Applying this rule, we are of opinion that as the petition included matters as to which the New York Central Company was not an indispensable party, the trial court was in error in granting, on the ground of its absence, the broad motion to dismiss

the entire original petition. Since, however, the court might properly have dismissed, *sua sponte*, for want of indispensable parties, so much of the original petition as related to enjoining the New York Central Company from voting its stock in the Lake Shore Company, appointing a receiver of its equity therein, directing the disposition and management thereof, enjoining it from issuing its consolidation bonds in exchange for Lake Shore collateral trust bonds, and so much as related to enjoining the Lake Shore Company from counting such stock or permitting it to be voted and from carrying out its agreement with the Read Committee in reference to the purchase of stock and setting aside the acquisition thereof, we find—independently of the question of whether "substituted service" should have been granted upon the New York Central Company, which will be hereinafter considered—no error in so much of the decree of dismissal as related to these portions of the original petition: except that, such dismissal being for lack of indispensable parties and not touching the merits, the decree of dismissal should be modified so as to be without prejudice. Swan Land Co. v. Frank, 148 U. S. 603, 612, 13 Sup. Ct. 691, 37 L. Ed. 577; Hyams v. Old Dominion Co., 209 Fed. 808, 811, 126 C. C. A. 532.

Since, however, the New York Central Company was not an indispensable party to so much of the original petition as sought an injunction against the Lake Shore Company from entering into the consolidation, the appointment of a receiver of the stocks owned by it in its subsidiary companies, and decrees for their management and disposition, it follows that in so far as the decree of dismissal related to those matters and awarded all unadjudged costs against the plaintiff, it was not warranted merely on account of the absence of that Company, and, unless sustainable upon other grounds, must be reversed.

(2) As to various reasons urged by the defendants in argument as grounds upon which the original petition should have been dismissed for want of equity, our conclusions are:

[10, 11] (a) As the petition did not disclose the dates upon which the consolidation agreement had been signed by the boards of directors of the various companies, it did not appear therefrom that the plaintiff had bought its stock in the Lake Shore Company after such agreement had been signed by its directors and in contemplation of the consolidation. In this respect the instant case differs from Continental Securities Co. v. Interborough Co. (D. C.) 207 Fed. 467, 470, which was determined after proof, at final hearing. (b) It did not appear from the face of the petition that the plaintiff had bought such stock merely for the purpose of instituting litigation and compelling the defendants to buy their peace. (c) The amount of such stock, namely five shares, was not so inconsiderable and trifling in value that the plaintiff should, on that ground, be denied such equitable relief as it might otherwise be entitled, as matter of right, to receive: especially as its petition was also filed in behalf of other stockholders similarly situated, some of whom, if the suit had been proceeded with, might, for aught then appearing, have joined and shared its benefits. In this respect also the instant case differs from Continental Securities Co. v. Interborough Co. (D. C.) 207 Fed. supra, 467, in which a single stock-

holder stood before the court as plaintiff at the final hearing; and now more nearly presents the situation in that case as originally decided upon demurrer. Continental Securities Co. v. Interborough Co. (C. C.) 165 Fed. 945, 956. And see, generally, as to the right of a single stockholder to interpose for the prevention of an ultra vires and illegal act by the corporation in which he is a stockholder: 2 Cook on Corporations (7th Ed.) § 669, p. 2152; and cases therein cited. (d) Nor is relief to be denied on the ground that the allegations of the original petition did not comply with the requirements of equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv) as to bills brought by stockholders against a corporation. This rule relates only to suits "founded on rights which may properly be asserted by the corporation," in which the stockholders' rights are indirect and derivative merely, and has no application to a suit brought by a stockholder against the corporation seeking, in his own direct right, to enjoin it from doing an illegal act. See, inferentially: Dickinson v. Traction Co. (C. C.) 114 Fed. 232, 242. It is hence unnecessary to determine whether the petition sufficiently complied with the provisions of this rule; or whether, in any event, this rule refers merely to suits commenced in the Federal courts, or applies as well to suits removed from state courts; a question upon which there is a conflict of opinion. See Hopkins' Fed. Eq. Rules, 149; and cases therein cited.

Furthermore, while we are not unmindful that, since the hearing in this court, it was decided in Paine Lumber Co. v. Neal, 244 U. S. 459, 471, 37 Sup. Ct. 718, 61 L. Ed. 1256, that a private person could not maintain a suit to enjoin a violation of the Federal Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209), under the provisions of its fourth section, it is clear, as a rule of pleading, under the authorities hereinabove cited, that the broad motion to dismiss the entire petition for want of equity would not have been properly grantable, upon this ground, as to so much of the petition alone as sought to enjoin the proposed consolidation on account of violation of this act.

[12] (3) It is further urged that the motion to dismiss should have been granted, for adequacy of remedy at law, by reason of the fact that section 9034 of the Ohio General Code provides that a stockholder who refuses to convert his stock into that of a consolidated company shall be paid the highest market value thereof during the two years preceding the making of the agreement for the consolidation by the directors, if he had previously so required. This statute, whose prime purpose was evidently to provide just compensation to a stockholder dissenting from a consolidation lawfully made, does not, in our opinion, provide an adequate remedy for a stockholder who seeks in advance to restrain the corporation from entering into an illegal consolidation. Furthermore this ground of the motion likewise could not, in any event, apply to the entire petition.

[13] 5. *Denying leave to file supplemental bill.* The material allegations in the supplemental bill which the plaintiff moved for leave to file, may be thus summarized: The stockholders of the Lake Shore Company had, after the filing of the original petition, held, on December 22, 1914, the meeting to consider the agreement of consolidation,

dated April 29, 1914. At such meeting the consolidation agreement had been approved, over the protest of the plaintiff and other minority stockholders; 459,379 out of 459,461 shares, including the 452,892 shares held by the New York Central Company and illegally voted by it, voting therefor. Pursuant thereto, the consolidation agreement had been executed by the officers of the several consolidating companies; the organization of the new corporation, the New York Central Railroad Company (hereinafter called the Consolidated Company), resulting therefrom, had been perfected; and it then claimed to be a consolidated railroad company organized under the laws of New York, Pennsylvania, Ohio, Indiana, Michigan and Illinois. The consolidation agreement had been filed in the office of the Secretary of State of Ohio, thereby pretending to transfer all the property of the Lake Shore Company in the northern district of Ohio to the Consolidated Company, which then illegally possessed and claimed, as successor in title, all of the property of the Lake Shore Company situated in the district, consisting of its line of railroad, with the real and personal property appurtenant, extending from the Pennsylvania line through Cuyahoga and other counties in Ohio. Pending the suit and pursuant to the consolidation agreement, the Consolidated Company had executed to trustees two mortgages covering the real and personal property of the Lake Shore Company, to secure certain issues of bonds from which the Lake Shore Company had received no benefit, thereby pretending to create liens upon the real and personal property of the Lake Shore Company within the district, to an amount exceeding $365,000,000.00; and had also executed to a trustee an indenture purporting to constitute a charge upon all the earnings and profits of the Lake Shore Company. The officers of the several consolidating companies, including the New York Central and Lake Shore Companies, claimed that by reason of the consolidation the corporate existence of these companies had been merged in that of the Consolidated Company; that their officers were *functi officio;* and that the title to all of their property had passed to it. The nine railroad companies entering into the consolidation with the New York Central and Lake Shore Companies and the trustees under said mortgages and indentures were citizens of other states than Maine. The consolidation agreement and all proceedings and instruments therein set forth, were illegal and void for the reasons set forth in the original petition, but constituted an apparent incumbrance and cloud upon the title to the property of the Lake Shore Company within the district. Wherefore the plaintiff prayed; that the Consolidated Company, as a *de facto* corporation, the nine other railroad companies embraced in the consolidation, and the trustees under the mortgages and indenture executed by the Consolidated Company, be made parties defendant; that, on behalf of the Lake Shore Company, its lawful right and claim to its property within the district be enforced, its title thereto quieted as against the claims of the defendants, and the cloud upon such title created by the consolidation and proceedings in pursuance thereof, removed; that the Consolidated Company be ousted from its possession and claim of title thereto and required to restore the same to the Shore Company; that

the ·mortgages executed by the Consolidated Company be decreed to be void as to such property; and for process and general relief.

This supplemental bill related solely to the matter of the consolidation and was framed upon the theory that the consolidation and subsequent proceedings in pursuance thereof, including the mortgages executed by the Consolidated Company, constituted a cloud upon the title to the property of the Lake Shore Company within the district, which the plaintiff, as a stockholder, on its behalf and in its right, sought to have removed.

(1) There was, however, no allegation that any of the nine consolidating companies which it was sought to make defendants, claimed, either before or after the consolidation, any right, title or interest in the properties of the Lake Shore Company within the district. On the contrary, it was specifically alleged that the officers of all the consolidating companies, including the New York Central Company, claimed that the title to the properties of the several constituent companies had been vested in the Consolidated Company. And this was admittedly the effect of the consolidation, if valid, under the provisions of the Ohio General Code. Clearly, therefore, the supplemental bill, which lacked either allegation that any of these companies asserted any claim or title to the property in question or prayer for relief against them, presented no ground whatever for making them parties or permitting the supplemental bill to be filed against them.

(2) As to the Consolidated Company and mortgage trustees, a more difficult question, however, arises. The defendants earnestly insist that the supplemental bill could not be properly filed because it sought to change the nature of the action from one *in personam* to one to remove cloud from title to property. Equity Rule 34 (198 Fed. xxviii, 115 C. C. A. xxviii) provides, however, that upon application of either party, the court may, upon just terms, permit him to file "a supplemental pleading, alleging material facts occurring after his former pleading." And if the plaintiff's original bill is sufficient to entitle him to one kind of relief, and facts subsequently occur to entitle him to other and more extensive relief, he may have such relief by setting out the new matter in the form of a supplemental bill. Candler v. Pettit, 1 Paige Ch. (N. Y.) 168, 19 Am. Dec. 399; Sheffield Iron Co. v. Newman (5th Cir.) 77 Fed. 787, 791, 23 C. C. A. 459. Here the original petition had sought to prevent the Lake Shore Company from entering into the consolidation at a time when only an action *in personam* would lie, and had prayed that if pending the action such consolidation were effected, it should be set aside. And the consolidation having been thereafter effected, pending the action, we hence do not regard it as an insuperable objection to the filing of a supplemental bill seeking to set it aside, that the nature of the action would, in effect, be thereby changed.

[14, 15] (3) It is also urged as an objection to the supplemental bill that it appeared from its allegations that neither the plaintiff nor the Lake Shore Company was in possession of the property from which it was sought to remove the cloud, but that the same was in possession of the Consolidated Company. However, the general equity rule that

a bill to remove cloud from title can only be filed by one in possession, is based upon the ground that the plaintiff ordinarily has an adequate remedy at law by suit in ejectment, and does not prevent the maintenance of such bill by one not in possession where there are other grounds of equitable relief. United States v. Wilson, 118 U. S. 86, 89, 6 Sup. Ct. 991, 30 L. Ed. 110; American Association v. Williams (6th Cir.) 166 Fed. 17, 21, 93 C. C. A. 1; Butterfield v. Miller (6th Cir.) 195 Fed. 200, 202, 115 C. C. A. 152. And since in the situation disclosed by the supplemental bill, the plaintiff could only proceed in equity, by asserting derivatively, as a stockholder, the right in the Lake Shore Company to have the cloud from its title removed, this being a recognized ground of equitable jurisdiction, we conclude that the mere lack of possession in either the plaintiff or the Lake Shore Company was not of itself fatal to the plaintiff's right to maintain the supplemental bill. This conclusion is strengthened by the holding in Citizens Savings Bank v. Illinois Central Railroad, 205 U. S. supra, 46, 27 Sup. Ct. 425, 51 L. Ed. 703, that a suit brought by owners of stock of a railroad company for the cancellation of deeds and leases under which its properties were held and managed by another corporation and in its possession, was a suit of which the Federal Court had jurisdiction under section 8 of the Act of March 3, 1875 (now section 57 of the Judicial Code), as one to remove an incumbrance or cloud upon property within the district; although it is to be noted that this case was determined purely upon the question of jurisdiction, and that the court stated (at pages 58 and 59) that in the absence of a demurrer or motion to dismiss for want of equity, it expressed no opinion upon the question whether, upon the showing made by the bill, the plaintiff was entitled to a decree giving it the relief asked.

(4) Passing, without determination, the question whether the supplemental bill substantially complied with the requirements of Equity Rule 27, as a stockholders' bill asserting derivatively a vested right in the Lake Shore Company, we reach the underlying question whether in any event the action of the District Court in refusing leave to file it, is, in view of the entire record, reviewable by this court.

[16] The granting or refusing of leave to file a supplemental bill rests in the discretion of the trial court; and is not reviewable by an appellate court unless there has been a gross abuse of such discretion. Berliner Gramaphone Co. v. Seaman (4th Cir.) 113 Fed. 750, 754, 51 C. C. A. 440, and cases therein cited. And see Gooch v. Presbyterian Hospital (6th Cir.) 239 Fed. 828, 830, 152 C. C. A. 614.

And, obviously, many matters which would not have constituted such want of equity as to prevent the maintenance of an original bill whose filing was a matter of right, are nevertheless circumstances to be properly considered in determining whether, as a matter of sound judicial discretion, leave should have been granted to file a supplemental bill as a matter of grace. See Continental Securities Co. v. Interborough Co. (D. C.) 207 Fed. supra, at page 472.

[17] The record disclosed the following facts: The plaintiff owned only 5 shares of the stock of the Lake Shore Company, out of a total outstanding issue of 499,961 shares. It had acquired this stock

June 27, 1914, that is, more than two months after April 29, 1914, the date of the consolidation agreement; and, it is fairly inferable, after such agreement had been entered into by the directors of the several companies. At the meeting of the stockholders of the Lake Shore Company only 77 other shares of stock had joined with it in voting against the consolidation. None of these other stockholders had joined either in the original petition or in the application for leave to file the supplemental bill. The line of the Lake Shore Company's railroad extended from Buffalo, New York, through Pennsylvania, Ohio and Indiana, to Chicago, Illinois, with branches to various points in Ohio, Indiana and Michigan. The supplemental bill, however, related merely to that portion of its property which was within the Northern District of Ohio. If maintained, the setting aside of the consolidation and mortgages to this limited extent only, leaving such Ohio property as a disconnected and separate segment, would clearly result in almost inextricable confusion, disturbance of business conditions and innumerable complexities. Furthermore, under the Ohio statute already cited, the plaintiff upon seasonable requirement, might have obtained the highest value of its Lake Shore stock during the two years preceding the consolidation agreement; while under the very terms of the consolidation it was entitled to receive for these 5 shares of stock 25 shares of the stock of the Consolidated Company. Under all the circumstances we think the trial judge was entirely justified in his conclusion that the plaintiff's interest not only approximated (relatively at least) the irreducible minimum, but was in danger of no ponderable damage if its efforts to set aside the consolidation should fail. And upon consideration of all these facts, we are unable to conclude that the action of the trial court in denying the plaintiff leave to file the supplemental bill constituted such abuse of discretion as to now authorize us to review its action in this behalf.

We are more content to reach this conclusion since, if the consolidation is in truth an unlawful restraining of trade in violation of the Acts of Congress and constitutions and laws of the several states involved, and a prejudice to the public interest, it may well be assumed that such interest will be properly protected by due proceedings instituted by the Federal and State authorities, in which all parties may be brought before the court, a full investigation had, and the public wrongs, if any, corrected by efficient and appropriate remedies; while, furthermore, the denial of leave to the plaintiff to file a supplemental bill will not operate, as matter of law, to prevent it from seeking, by an appropriate and independent original bill, such relief in equity, if any, as it may be entitled to receive, in addition to such relief, if any, as it may hereafter properly obtain under its original petition or any other appropriate pleading supplemental thereto, which it may be granted leave to file.

6. *Motions for substituted process.* The plaintiff moved for substituted process, under section 57 of the Judicial Code, for the New York Central Company, the individual defendants, Read, Evans and Wood, the nine other railroad companies which had entered into the consolidation, and the trustees under the mortgages and indenture

executed by the Consolidated Company. This section provides that in any suit commenced in a District Court to remove any incumbrance, lien or cloud upon the title to property within the district, an order directing any non resident absent defendant to make defense may be served upon him wherever found, and that in default of his appearance, the court may entertain jurisdiction and proceed to an adjudication of the suit, which shall, as regards such absent defendant, affect only the property which is the subject of the suit and within the jurisdiction of the court. It relates, upon its face, only to suits affecting property which is the subject matter of the suit; and, it is clear, only authorizes the service of such appearance order upon a defendant asserting a claim thereto. There was hence no ground whatever for granting such appearance order (termed by the plaintiff "substituted process") for the New York Central Company under the original petition; which was purely an action *in personam* that did not relate to any property within the district to which the New York Central Company was asserting any claim. For like reason there was no ground for the issuance of such appearance order for the defendants Read, Evans and Wood. And since leave was denied to file the supplemental bill there was necessarily no ground for issuing appearance orders for any of the defendants thereunder.

7. For the reasons stated, the decree of the District Court is affirmed, except in so far as it dismissed those portions of the original petition wherein it was sought to enjoin the Lake Shore Company from entering into the proposed agreement and consolidation and to have receivers appointed of the stock owned by it in its various subsidiary companies and decrees made for their disposition and management, and in so far as it awarded against the plaintiff the general costs of the cause, as to which matters the decree will be reversed (the first of these matters being now material, even after the consolidation, at least in so far as relates to the final adjudication of costs); but such reversal is with leave to the Lake Shore Company to hereafter move in the District Court to dismiss so much of the original petition as sought to enjoin the Lake Shore Company from entering into the proposed agreement and consolidation on account of the alleged violation of the Federal Anti-Trust Act; and except, further that in so far as the decree dismissed the remaining portions of the original petition, it is modified so that the dismissal, being for want of indispensable parties, is without prejudice. The plaintiff will pay two-thirds of the costs of the appeal; and the Lake Shore Company, one-third. And the cause will be remanded to the District Court for further proceedings not inconsistent with this opinion.